HONEYMEAD PRODUCTS COMPANY v.
VICTOR CHRISTGAU.
HONEYMEAD MANKATO COMPANY v. SAME.[1]

April 27, 1951.

Nos. 35,327, 35,412.

[1]Reported in 47 N. W. (2d) 754.

*Samuel H. Maslon* and *Roger E. Joseph,* for relators.

*J. A. A. Burnquist,* Attorney General, *Knute D. Stalland,* Assistant Attorney General, and *George W. Olson,* for respondent.

FRANK .T. GALLAGHER, JUSTICE.

Certiorari to review decisions of the director of the division of employment and security.

By order of this court, two cases were consolidated for hearing upon one set of briefs.

Mankato Soybean Products, Inc., a Minnesota corporation, referred to herein as Soybean or the first or original employing unit, was an employer subject to the Minnesota employment and security law from March 1, 1939, to September 1, 1947. It operated a soybean processing plant at Mankato. On the latter date, all the plant and other business assets of Soybean were sold to Mankato Processing Company, also a Minnesota corporation (corporate name changed February 1, 1948, to Honeymead Mankato Company), referred to herein as Mankato or the second employing unit. On October 1, 1948, Mankato was sold to Honeymead Products Company, an Iowa corporation, referred to herein as Honeymead or the third employing unit. Relators claim that on that date Mankato transferred all its assets and property to Honeymead; that such transfer was made pursuant to an agreement of reorganization dated September 30, 1948, between Mankato, Honeymead, and the respective stockholders of the two corporations; and that as a result of the performance of the agreement of reorganization Mankato became the wholly owned subsidiary of Honeymead. Relators further claim that following the acquisition of the assets and property of Mankato by Honeymead the latter continued the employment activities of Mankato, and that since October 1, 1948, Mankato has not owned any assets or property nor operated a business in Minnesota or elsewhere.

The two cases before us for review at this time result from the efforts of Honeymead to get a reduced unemployment contribution rate, to which the director says it is not yet entitled. In order to do this, Honeymead, the last of the three companies in line of succession, on November 17, 1948, applied for the transfer of its predecessor's (Mankato) employment experience record. This application was granted by the director on December 1, 1948, but he ruled that Honeymead was not eligible for a rate other than 2.7 percent for the calendar year 1948, because its employment experience, combined with that of its predecessor (Mankato), did not meet the requirements of 26 USCA, § 1602(a)(1), Internal Revenue Code. No appeal was taken by Honeymead from this determination, and it was accordingly assigned the 2.7 percent rate for the calendar year 1949. The next move on the part of Honeymead was made on August 12, 1949, when it applied for transfer of the employment experience record of Soybean, which company had been out of business since September 1, 1947, when it sold to Mankato. This application was denied by the director on the ground that Soybean was no longer an employing unit and was not a party to a change of organization or a reorganization with Honeymead, as required by M. S. A. 268.06, which reads in part as follows:

"Subd. 22. For experience rating purposes, one or more employing units which is or are the subject of or parties to a change of ownership or any form of organization or reorganization of an employing enterprise including a change in legal identity or form, shall upon application be deemed to be a successor entitled to the transfer of the employment experience record including the war risk account of one or more such employing enterprises involved in such change of ownership, organization, or reorganization if the director finds that

"(1) There is a continuation of the employment activities of the predecessor employing unit or units and that the purpose of such change is not to avoid a contribution rate in excess of 2.7%, and such transfer would not be inequitable and would not tend to defeat the object and purpose of this law.

"(2) The provisions of this subdivision apply to such changes occurring in the calendar year 1943 and thereafter. Any successor employing enterprise, resulting from a change of ownership or any form of organization or reorganization to which the provisions of this subdivision apply, occurring prior to July 31, 1947, shall make application for the transfer of the employment experience record of the predecessor not later than December 31, 1951, in order to avail itself of the provisions of this subdivision."

It is to review the decision of the director denying the application of Honeymead for transfer of the employment experience record of Soybean which is before this court as case No. 35,327.

Following denial by the director of the transfer of Soybean's employment experience record to Honeymead, the latter next made application on May 22, 1950, on behalf of Mankato, to go back and pick up the employment experience record of Soybean. A referee denied that application the following month, on the ground that Mankato was no longer an employing unit at the time of the application and had no standing under the act. An appeal was taken from that decision; but, pending the appeal, a request for leave to take further testimony was granted applicant. Subsequently, on August 14, 1950, the referee again denied the application, which denial was affirmed by the director. Case No. 35,412 involves a review of that decision.

The questions raised by relators are as follows:

(1) Does M. S. A. 268.06, subd. 22(2), prevent transfer to a successor employing unit of the employment experience record of a remote predecessor involved in an organizational change occurring subsequent to July 31, 1947?

(2) Does § 268.06, subd. 22, require that a successor employing unit applying for transfer of the employment experience record of an immediate predecessor be carrying on employment activities at the time of the application?

The director answered both questions in the affirmative.

Relators concede that the sole interest of Mankato, the second

employing unit, in the employment experience record of Soybean, the original employing unit, is to tack the latter's employment experience period to the combined experience periods of Mankato and Honeymead, but they deny that Mankato is a "total stranger," a designation used in the determinations and decisions of the division. It is the position of relators that Mankato is the wholly owned subsidiary of Honeymead; therefore, that there is nothing improper about the parent company (Honeymead) causing its subsidiary (Mankato) to make application for a transfer which will benefit Honeymead. It is the director's position in case No. 35,327 that Honeymead was not entitled to Soybean's employment experience record, as applied for on August 12, 1949, since the latter company was no longer an employing unit and was not a party to a change of organization or a reorganization with Honeymead, as required by § 268.06, subd. 22. The director contends also in case No. 35,412 that Mankato, in whose behalf Honeymead made its application on May 22, 1950, was in no position to apply for Soybean's employment experience record, because Mankato was no longer an employing unit at that time; that it had been out of business for about 20 months; and that it could not at that late date represent itself as being about to carry on the employing enterprise of Soybean. He substantiates this claim with the testimony of Lowell W. Andreas, vice president, secretary, and treasurer of Mankato, who testified as follows:

"Q. * * * Now, as I understand it, Mr. Andreas, from your testimony and certain documents that are in the record, and the matter of the application of Honeymead Products Company which has been heard heretofore, that on October 1, 1948, the Honeymead Mankato Company [Mankato] sold and delivered all of its assets, all of its physical assets, to Honeymead Products?

"A. Yes.

"Q. Since that time has Honeymead Mankato Company acquired any new physical assets?

"A. No.

"Q. Has it had any paid employees?

"A. None.

"Q. Neither in Minnesota nor elsewhere, is that correct?

"A. That is right.

"Q. In other words, Honeymead Mankato Company is now merely a skeleton corporation?

"A. That is right.

"Q. That is, it is a franchise that lies dormant?

"A. That is right.

"Q. And has since the transfer of its physical assets to Honeymead Products?

"A. That is correct.

"Q. So that when you say that Honeymead Mankato Company is a wholly-owned subsidiary of Honeymead Products Company, all you mean is that the stock of Honeymead Mankato Company which in effect amounts to nothing more than the ownership of the corporate franchise issued by the state, for whatever that is worth, is owned by Honeymead Products Company, is that it?

"A. That is correct."

Relators do not contend that Mankato, by reason of its application in May 1950 for transfer of Soybean's employment experience record, is in itself entitled to its own prior employment experience record from September 1, 1947, to October 1, 1948. They concede that that period had already been tacked to the employment experience period of Honeymead, and thus, irrespective of the lapsed continuity in the employment experience of Mankato, would not be available to Mankato itself. They contend that the application of Mankato is directed to the employment experience period of Soybean, the original employing unit in the chain of three units, and they seek to enforce rights growing out of the continuity of employment activities which they claim did not lapse when Mankato discontinued its own corporate employment activities on October 1, 1948. They submit that the May 1950 application of Mankato, the second employing unit in the chain, should have been granted

by the director, and that case No. 35,412 should therefore be first considered on review by this court. They contend that if the director is reversed in that case a consideration of the companion case (No. 35,327) will not be necessary, because, if the Mankato case (No. 35,412) is remanded to the director with instructions to grant Mankato's application, it will produce for Honeymead a combined experience rating for the entire period commencing October 1, 1948. They next submit that if the decision of the director in case No. 35,412 is not reversed the Honeymead case (No. 35,327) should then be considered, since a reversal of that decision and a remand to the director with instructions to grant the application of Honeymead would also result in Honeymead's being entitled to an experience rating for the entire period after September 30, 1948.

■ This court has already laid down the rule that where there is any evidence reasonably tending to sustain the findings of the director of the division of employment and security they will not be disturbed on review. In reviewing an order or determination of an administrative board, this court will go no further than to determine whether the evidence was such that the board might reasonably make the order or determination which it made. Chellson v. State Div. of Employment & Security, 214 Minn. 332, 8 N. W. (2d) 42; State ex rel. Rockwell v. State Board of Education, 213 Minn. 184, 6 N. W. (2d) 251, 143 A. L. R. 503; Hamlin v. The Coolerator Co. 227 Minn. 437, 35 N. W. (2d) 616; 1 Dunnell, Dig. & Supp. § 397b, and cases cited.

In construing a statute relating to the review of decisions of the industrial commission, which is substantially identical with the one relating to the review of decisions of the director of the division of employment and security (see Richard v. Federal Cartridge Corp. 217 Minn. 136, 14 N. W. [2d] 118), this court said in Lading v. City of Duluth, 153 Minn. 464, 190 N. W. 981, that a proceeding under the workmen's compensation act is not a remedial case within the meaning of the constitution; that, although the appellate jurisdiction of the court authorizes, and in some instances requires, this

court to consider the evidence when presented on appeal, or other proceeding in review, such consideration is for the limited purpose of determining whether the verdict or findings of fact made by the trial court, as the case may be, are clearly and manifestly against the evidence; and that it is not examined or considered as an original question and with a view to determining the facts. Continuing, the court said that the determination of the facts resting with the trial court or other tribunal to which the matter is committed, and the findings there made, are conclusive and final unless clearly or manifestly against the evidence.

With these rules in mind, we consider first the Mankato case (No. 35,412), as suggested by relators.

It appears to us that there is evidence reasonably tending to sustain the decision of the director to the effect that Mankato's application should be denied, because it was not an employing unit within the meaning of the act at the time Honeymead made its application on behalf of Mankato in May 1950.

Under the caption "Transfer of employment experience record to successor," § 268.06, subd. 22, provides that for experience rating purposes one or more employing units which is or are the subject of or parties to a change of ownership or any form of organization or reorganization of an employing enterprise, including a change in legal identity or form, shall be deemed upon application to be a successor entitled to the transfer of the employment experience record, including the war risk account of one or more such employing enterprises involved in such change of ownership, organization, or reorganization *if the director finds* that there is a continuation of the employment activities of the predecessor employing unit or units; that the purpose of such change is not to avoid a contribution rate in excess of 2.7 percent; and that such transfer would not be inequitable and would not tend to defeat the object and purpose of the law.

In connection with the Mankato case, the director adopted and affirmed as his decision the decision of the referee, based upon his

116

findings as amended. Finding No. 2 was amended to read that on September 30, 1948, pursuant to an agreement of reorganization (employer's exhibit A) entered into between all the stockholders of Mankato, a Minnesota corporation, and Honeymead, an Iowa corporation, the stockholders of Mankato surrendered their stock to Honeymead; that Mankato transferred all its assets, real and personal, to Honeymead; that Honeymead, in consideration therefor, issued shares of stock in Honeymead directly to former stockholders of Mankato; that since October 1, 1948, the employer activities of Mankato have been continued by Honeymead; and that upon proper application by Honeymead the division transferred to it the employment experience record of Mankato covering the period from September 1, 1947, to and including September 30, 1948. The decision adopted by the director was that since October 1, 1948, Mankato has not been an employer or an employing unit under the provisions of the act; has not continued the employment activities of its predecessor, Soybean; and that it therefore is not entitled to the employment experience record of Soybean.

It is our opinion that the evidence sustains this decision. It is obvious that when the application on behalf of Mankato was made on May 22, 1950, Mankato had not been an employing unit for almost 20 months. During that time it had no physical assets, no employes in Minnesota or elsewhere, and was merely a skeleton corporation. It could have applied for Soybean's employment experience factors for any given year during its period of existence from September 1, 1947, to October 1, 1948, but it neglected to do so. It therefore appears to us that when application was made on behalf of Mankato in May 1950 the director was correct in finding that it was not an employer or an employing unit within the meaning of the act. We therefore affirm the decision of the director in that case.

Even if Mankato had been an employing unit at the time the application was made on May 22, 1950, which the director found it was not, it still would be precluded from going back and picking

up the experience record of Soybean, since Mankato did not purchase the assets of Soybean until after July 31, 1947. It appears to us that when the legislature amended § 268.06, subd. 22, as of February 27, 1947, it intended to provide for the retroactive application of the concept of continuation of employing enterprises to all those changes of ownership which occurred between January 1, 1943, and July 31, 1947. Section 268.06, subd. 22(2), (L. 1947, c. 32, § 8), stated that the provisions of this subdivision should apply to such changes occurring in the calendar year 1943 and thereafter. However, it then provided:

"* * * Any successor employing enterprise, resulting from a change of ownership or any form of organization or reorganization to which the provisions of this subdivision apply, *occurring prior to July 31, 1947,* shall make application for the transfer of the employment experience record of the predecessor not later than December 31, 1947 [extended to December 31, 1951, by L. 1949, c. 605, § 17], in order to avail itself of the provisions of this subdivision." (Italics supplied.)

It seems to us that the legislature specifically stated there to what extent the law should be retroactive. Otherwise it is difficult to understand why it inserted in the act the words "occurring prior to July 31, 1947." It is undisputed here that Soybean was not taken over by Mankato until September 1, 1947, and that Mankato was not taken over by Honeymead until October 1, 1948.

■ In connection with the appeal of Honeymead (case No. 35,-327), the referee found that on August 12, 1949, Honeymead filed an application for transfer of the employment experience record of Soybean; that the latter employer discontinued business on September 1, 1947, when its business was acquired by Mankato; and that the division denied Honeymead's application on August 22, 1949, and refused to transfer to its account the employment experience record of Soybean, because Mankato, Honeymead's immediate predecessor, did not apply for and did not receive transfer of Soybean's employment experience record; because Mankato

was no longer in business and no longer an employer under the law; therefore, that it could not apply for the employment experience record of its predecessor, Soybean. The referee considered and determined that Honeymead was not the successor of Soybean and was not entitled to the employment experience record of Soybean. Upon appeal, the director affirmed that decision and approved and adopted it as the findings and decision of the director.

It is our opinion that there was evidence reasonably tending to sustain the findings and decision of the director. It appears that at the time of Honeymead's application on August 12, 1949, Soybean was no longer an employing unit and was not a party to a change of ownership or any form of organization or reorganization with Honeymead, as provided in § 268.06, subd. 22.

At the time of the oral argument, relators referred to a case entitled Continental-United Industries Co. Inc. v. Director of Division of Employment Security, decided by the supreme judicial court of Massachusetts November 7, 1950, and later supplied us with a copy of the opinion as published in 95 N. E. (2d) 172. Upon further research in connection with the case, we discovered that the above opinion was withdrawn by the court pending reconsideration and that another opinion was substituted therefor, which is reported in 97 N. E. (2d) 727. An examination of that opinion satisfies us that the issues there were not the same as in the case at bar and are not determinative of the issues here.

Affirmed.