Joseph John **RUZIC,**
**Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C8-89-2087.

Court of Appeals of Minnesota.

May 8, 1990.

Review Denied June 26, 1990.

Donald H. Nichols, Nichols, Kaster & Anderson, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by WOZNIAK, C.J., and PARKER and SHORT, JJ.

## OPINION

SHORT, Judge.

Joseph John Ruzic appeals from the trial court's order sustaining the revocation of his driver's license under the implied consent law, Minn.Stat. § 169.123, subd. 4 (1988). Appellant argues (1) the trial court erred in holding a bulldozer, which appellant was driving on private property, was a "motor vehicle" within the meaning of Minn.Stat. § 169.123, and (2) revocation of appellant's driver's license violated his constitutional rights. We disagree and affirm.

## FACTS

On June 9, 1989, at approximately 9:30 p.m., an Eden Prairie police officer was dispatched to investigate a complaint about loud construction noise coming from a privately-owned vacant lot. The officer discovered appellant operating a Caterpillar bulldozer on the lot. The bulldozer traveled on steel tracks, and was equipped with a bucket or blade on the front. There is no evidence to suggest appellant drove the bulldozer off the lot.

While questioning appellant, the officer detected an odor of alcohol, and eventually arrested him for DWI. Appellant stipulated that the officer read him the implied consent advisory and that he failed the Intoxilyzer test. Appellant's driver's license was revoked under the implied consent law.

## ISSUES

I. Is a bulldozer a "motor vehicle" for purposes of Minn.Stat. § 169.123 (1988)?

II. Does application of Minn.Stat. § 169.123 (1988) to appellant violate his constitutional rights?

## ANALYSIS

### I.

Appellant argues his operation of a bulldozer on private property is specifically excluded from the implied consent law because (a) the bulldozer cannot be driven legally on a highway, (b) it runs on tracks, and (c) it was being operated on private property. The implied consent law applies to one who drives, operates, or is in physical control of a "motor vehicle." Minn. Stat. § 169.123, subd. 2(a) (1988). "Vehicle" is defined as:

> [E]very device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks.

Minn.Stat. § 169.01, subd. 2 (1988). "Motor vehicle" is defined as:

> [E]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires. Motor vehicle does not include a vehicle moved solely by human power.

Minn.Stat. § 169.01, subd. 3 (1988).

▮ We disagree with appellant's interpretation of these statutes. First, the implied consent law does not restrict its definition of vehicles to those that can only be legally driven upon a highway. Further, bulldozers may be legally driven upon a highway with special permits. *See* Minn. Stat. § 169.72, subd. 1 (1988). Second, while a bulldozer runs on movable tracks, Minn.Stat. § 169.01, subd. 2 excepts only devices used exclusively on stationary tracks from the definition of vehicle. *See Melby v. Commissioner of Public Safety,* 367 N.W.2d 527, 528 (Minn.1985) (snowmobiles, which run on movable tracks, are motor vehicles). Finally, it is well established that the implied consent law applies to activity on private as well as public property. *Schafer v. Commissioner of Public Safety,* 348 N.W.2d 365, 367–68 (Minn.Ct.App.1984).

▮ It is arguable that the legislature did not intend the implied consent law to apply to vehicles for which no driver's license is required. However, the legislature has already excepted from the implied consent law persons operating an off-road snowmobile or all-terrain vehicle while under the influence. *See* Minn.Stat. §§ (84.-911), 169.121, subd. 11 (1988). Exceptions expressed in law are construed to exclude all others. Minn.Stat. § 645.19 (1988). It is not the role of this court to carve out another exception to the implied consent law for persons operating bulldozers on private property. For these reasons, a bulldozer qualifies as a "motor vehicle" within the meaning of Minn.Stat. § 169.123, subd. 2(a).

### II.

▮ Statutes are presumed to be constitutionally valid. *In re Haggerty,* 448 N.W.2d 363, 364 (Minn.1989). A challenge to the constitutionality of a statute meets formidable statutory construction opposition. *State ex rel. Forslund v. Bronson,* 305 N.W.2d 748, 751 (Minn.1981). Appellant has the burden of demonstrating beyond a reasonable doubt that the implied consent law offends the principles of fundamental fairness and equal protection. *See McGuire v. C & L Restaurant Inc.,* 346 N.W.2d 605, 611 (Minn.1984).

▮ Appellant argues he was given inadequate warning that driving a bulldozer on private property while under the influence is prohibited conduct under the implied consent laws. The void-for-vagueness doctrine requires that a law be definite, i.e., that ordinary people can understand what conduct is prohibited and the statute does not encourage arbitrary and discriminatory enforcement. *State v. Newstrom,* 371 N.W.2d 525, 528 (Minn.1985). Appellant argues the statute is vague because it does not clearly apply to a bulldozer. However,

bulldozers are self-propelled vehicles capable of being legally operated on public highways with the proper permits. They are therefore within the scope of the statute.

■ Appellant argues the definition could be applied to a variety of machines that no reasonable person would anticipate were covered by the implied consent law. However, appellant must show the statute lacks specificity as to his ·own behavior rather than some hypothetical situation. *State, Department of Public Safety v. Elk River Ready Mix Co.*, 430 N.W.2d 261, 264 (Minn.Ct.App.1988). An ordinary person would understand that driving a bulldozer while intoxicated is at least as dangerous as driving a car, and is likely to be covered by the implied consent law. The law, construed literally, applies to bulldozers. We therefore hold appellant was not denied his due process right.

Appellant has offered no evidence of arbitrary and discriminatory law enforcement and has otherwise failed to establish beyond a reasonable doubt that the statutory definition of "motor vehicle" is unconstitutionally vague or that its application to a bulldozer violates his right to due process of law.

■ Appellant also argues the revocation of his driver's license singles him out for arbitrary treatment and thus denies him equal protection of the laws. However, the record demonstrates appellant was treated in the same manner as any person who was the subject of a call to an officer reporting a disturbance involving a motor vehicle. *See Price v. Amdal*, 256 N.W.2d 461, 468 (Minn.1977).

## DECISION

The implied consent law applies to an operator of a bulldozer on private property.

Affirmed.

WOZNIAK, C.J., dissents with opinion.

WOZNIAK, Chief Judge (dissenting).

I respectfully dissent and suggest that the majority has erroneously misread legislative intent.

The majority today holds that any person operating motorized equipment or a device which *could* be transported upon a highway may lose his or her license to drive an automobile, even though no such license is required for the equipment being operated, and even though the operation occurs solely on private property, not on a highway or road.

Our function is to determine whether application of the implied consent law to the facts of this case is consistent with the spirit and intent of the legislature. *Di Re v. Central Livestock Order Buying Co.*, 246 Minn. 279, 286, 74 N.W.2d 518, 524 (1956). I believe the result reached by the majority is clearly inconsistent with legislative intent.

The underlying theory of "implied consent" is that by accepting a *license* to drive a motor vehicle, a person gives *implied consent* to test for the presence of chemicals. Minn.Stat. § 169.123, subd. 2(a) (1988). Where a license is not required to operate a vehicle, no consent can be implied. Consistent with this theory and intent, the legislature specifically *rejected* the loss of a driver's license as a penalty for a snowmobile or all-terrain vehicle operator's refusal to be tested for alcohol or for conviction of operating snowmobiles or all-terrain vehicles while under the influence of alcohol. Minn.Stat. § 169.121, subd. 11 (1988). No driver's license is required to operate the motorized equipment, and the legislature clearly indicated that loss of driving privileges shóuld not result from nondriving activity occurring off the public highways merely because the activity involved the use of alcohol.

An individual who refuses chemical testing arising from the operation of a snowmobile, all-terrain vehicle, or motorboat while under the influence, or who is convicted of operating those devices while under the influence, loses the privilege of operating the *same* type of equipment for a period of time, but his or her driver's license is unaffected. *See* Minn.Stat. §§ 84.-87, subd. 2b; 84.91, subd. 6; 84.911, subd. 2(a); 169.121, subd. 11; 361.12, subd. 6;

361.121, subd. 2(a) (1988). The legislative intent is continuing and clear. A bulldozer is not a "motor vehicle" under the law.

We must construe the implied consent statutes to avoid reaching an absurd or unreasonable result. *See* Minn.Stat. § 645.17(1) (1988). This result is both. While snowmobiles and all-terrain vehicles are more often operated on or near highways, and while motorboats are more likely to be surrounded by many other boats and operators, their operators are not subject to revocation of their driver's licenses. Nonetheless, the majority here holds that a bulldozer operator must lose his or her driver's license. In keeping with the intent of the legislature, I would hold that operation of a bulldozer on private land, for which no license or permit is required, does *not* jeopardize the individual's driver's license.

Excessive noise at nighttime is disturbing to a neighborhood; other ordinances cover such infractions.

Upholding this revocation would authorize police to rush into people's yards or farms to test the alcohol consumption of an owner operating devices such as a riding lawnmower or snowblower, tiller or tractor, or farm machinery; this is inconsistent with the plain dictates of common sense.