Lori JOHNS, Respondent,

v.

HARBORAGE I, LTD., a/k/a America Live, a foreign limited partnership, FPM, Ltd., Defendants, Jillian's Entertainment Corporation et al., Appellants.

No. C1–01–2161.

Court of Appeals of Minnesota.

June 25, 2002.

Frank Vogl, Patrick B. Hennessy, A.R., Hazel J. Uy, A.R., Best & Flanagan, LLP, for respondent.

Charles E. Gillin, Sarah Sanville, Jardine, Logan & O'Brien, PLLP, for appellants Jillian's.

Dan Biersdorf, for appellant Harborage I.

Considered and decided by RANDALL, Presiding Judge, STONEBURNER, Judge, and HUSPENI, Judge.*

## OPINION

STONEBURNER, Judge.

Appellants Jillian's Entertainment Corporation and its wholly owned subsidiary,

Jillian's Gator's of Minneapolis, Inc., (Jillian's) appeal from the district court's grant of summary judgment to respondent Lori Johns, ruling that Jillian's is the successor corporation of Johns's former employer, Harborage I, Ltd., and is liable to Johns for judgments entered against Harborage I for damages and attorney fees for Johns's Title VII and Minnesota Human Rights Act claims of sex discrimination. Because we determine that, as a matter of law, Jillian's is not Harborage I's successor, we reverse.

## FACTS

Respondent Lori Johns was a server, hostess and cashier at Gators Bar and Grill at the Mall of America from January to March 25, 1993. Harborage, Inc. provided the employees for Gators, and Harborage I managed Gators, as well as several other bars at the Mall of America. In June 1995, Johns sued Harborage, Inc. for employment discrimination under Title VII of the Civil Rights Act of 1964 and the Minnesota Human Rights Act. Confusion over which corporation was actually Johns's employer for purposes of her discrimination claims was resolved when the district court determined that Harborage, Inc. (which filed bankruptcy during the lawsuit) and Harborage I were a single integrated enterprise, each of which could be considered Johns's employer for purposes of the lawsuit. Johns amended her complaint to add FPM, Ltd. as a defendant. FPM, Ltd. was the lessee of the Gators's premises and held the liquor license for the premises.

After a bench trial, the district court issued findings of fact, conclusions of law and an order for judgment on September 8, 1997, finding that Harborage I, as em-

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ployer, subjected Johns to a hostile work environment based on her sex. The district court awarded damages, including punitive damages and attorney fees, to Johns against Harborage I and dismissed all of Johns's claims against FPM, Ltd.

Before the district court judgments were entered, Jillian's entered into an Asset Purchase Agreement (APA) with FPM Ltd. (d/b/a Gators), and various other entities, to purchase the assets of Gators and two other bars, the Minnesota Original Sports Bar and Knuckleheads at the Mall of America, Ltd. Neither Harborage I nor Harborage, Inc. was a party to the APA, but the selling entities share the same mailing address and offices and have common officers with Harborage, Inc. and Harborage I.

In February 1998, Harborage I appealed the district court's judgments. On May 12, 1998, the APA closed. Pursuant to the APA, Jillian's agreed to assume certain of the seller's liabilities and the sellers retained certain liabilities. The assumed liabilities are defined in the APA as "the Seller's payables up to an amount equal to the saleable inventory * * * of the Business at the Initial Closing Date * * * plus accrued vacation benefits up to [a specified limit]." Retained liabilities are defined in the APA as "all liabilities and obligations, absolute or contingent, known or unknown, due or to become due, now existing or hereafter incurred, of Seller and the Partnerships other than the Assumed Liabilities." On the closing date, Jillian's entered into a Transition Services Agreement with Harborage I pursuant to which Harborage I agreed to continue to provide the same administrative and labor services it previously provided to Gators until identified employees of Harborage I became Jillian's employees.

On November 17, 1998, this court affirmed the district court's decision, except as to punitive damages. On January 13, 1999, we awarded Johns $12,500 in attorney fees and expenses incurred on appeal. Judgment in this amount was entered against Harborage I on February 24, 1999. In March 1999, Johns learned that Harborage I's assets had been largely liquidated and Harborage I was unable to satisfy any part of Johns's judgments.

Johns then moved the district court to amend her complaint to add Jillian's as defendants, asserting that "beyond any reasonable doubt" Jillian's is a successor to Harborage I and is liable for the judgment. Harborage I did not oppose the motion which was granted by the district court on September 30, 2000. Jillian's was served with the amended complaint. Jillian's answered denying that it is Harborage I's successor and denying that Jillian's had any contractual relationship with either Harborage I or Harborage, Inc.

After Jillian's was added to the complaint as a defendant, Johns served a Garnishment Summons and Garnishment Non–Earnings Disclosure on Jillian's. Jillian's responded timely, denying liability. Johns then moved for summary judgment against Jillian's in the underlying lawsuit to which Jillian's had been added as a defendant.

Johns argued that Jillian's purchased all of the operating assets of a number of affiliates of Harborage I, all of which shared common offices and officers with Harborage I. Johns also argued that because Jillian's entered into agreements with Harborage I whereby former employees of Harborage, Inc. became Jillian's employees and because Jillian's continues to operate Gator's essentially unchanged from when Harborage I operated the business, Jillian's "was and is a direct successor, contractually and otherwise, as employer, of the employ-

ees and business operations of the Gator's in the Mall of America."

Jillian's filed a cross motion for summary judgment, objecting to the procedure by which it was made a defendant and denying that it is a successor to Harborage I. Jillian's argued that it did not purchase any assets from Harborage, Inc. or Harborage I, or merge with, or acquire or assume any liability of those businesses in any way. Jillian's noted that Harborage I is an existing entity separate from Jillian's.

The district court denied the parties' request for oral argument on the summary judgment motions, granted Johns's motion for summary judgment, and denied Jillian's motion for summary judgment. The district court ordered the judgments amended to add Jillian's as judgment debtors, ruling that under federal or state law, Jillian's is a successor of Harborage I and is liable for the judgments against Harborage I. Jillian's appeals.

### ISSUES

I. Did the district court abuse its discretion by granting Johns's post-judgment, post-appeal motion to amend the complaint to add Jillian's as a defendant?

II. Did the district court err by determining as a matter of law that Jillian's is a successor of Harborage I?

III. If Jillian's is Harborage I's successor, is Jillian's liable for the judgments Johns obtained against Harborage I, including the award of attorney fees by the district court and this court?

### ANALYSIS

**I. Post-judgment, post-appeal amendment to complaint**

Whether a complaint may be amended post-judgment, post-appeal to add a defendant appears to be an issue of first impression in Minnesota. Minn. R. Civ. P. 15.01 provides in relevant part:

> A party may amend a pleading once as a matter of course at any time before a responsive pleading is served. * * * Otherwise a party may amend a pleading only by leave of court * * * and leave of court shall be freely given when justice so requires.

The rules regarding amendment of pleadings are to be liberally construed. *Carlson v. Hennepin County,* 479 N.W.2d 50, 54 (Minn.1992). Amendment of pleadings is a matter within the discretion of the district court and will not be reversed unless the court abused its discretion. *Brendsel v. Wright,* 301 Minn. 175, 178, 221 N.W.2d 695, 696–97 (1974); *Dale v. Pushor,* 246 Minn. 254, 262, 75 N.W.2d 595, 601 (1956).

Johns argues that the broad authority to amend a pleading exists even after judgment is entered, citing Minn. R. Civ. P. 15.02 and cases decided pursuant to that rule. Rule 15.02, however, deals with amending pleadings, even post judgment, to conform to issues tried by express or implied consent of the parties. Neither Rule 15.02 nor cases decided pursuant to it provide authority for a post-judgment, post-appeal amendment to a complaint to add a new party.

Cases interpreting the analogous federal rule, Fed.R.Civ.P. 15(a), generally hold that a district court may not consider a motion for leave to amend after judgment is entered, unless the judgment is vacated or set aside under Rule 59 or Rule 60. 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1489 (2d ed.1990). In *EEOC v. SWP, Inc.,* however, a post-judgment amendment was allowed pursuant to Fed.R.Civ.P. 25(c) to add as a defendant a corporation that had purchased all of the assets of the originally named-defendant corporation. 153

F.Supp.2d 911, 913–17, 926–27 (N.D.Ind. 2001).

> In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party.

Fed.R.Civ.P. 25(c). Minnesota has an identical rule, Minn. R. Civ. P. 25.03, but the rule applies only to the transfer of an interest while an action is pending. 1 David F. Herr & Roger S. Haydock, *Minnesota Practice* § 25.6 (1998). We do not find any authority in this rule for the post-judgment, post-appeal amendment addition of a party and we agree with the majority of the federal decisions holding that post-judgment, post-appeal amendments to add a party are not authorized by Rule 15.

> To hold otherwise would enable the liberal amendment policy * * * to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation.

Wright, *supra*, § 1489.

Minnesota has a comprehensive procedure for pursuing collection of a judgment from a successor corporation set out in the statutes governing garnishment. *See* Minn.Stat. § 571.71–.932 (2000). Here, Johns issued a garnishment summons to Jillian's after she amended the complaint. *See* Minn.Stat. § 571.71 (2000) (permitting a creditor to issue a garnishment summons against any third party as an ancillary proceeding to a civil action at any time after entry of a money judgment in the civil action). Jillian's timely responded to the garnishment summons, denying liability, stating that it does not owe money to Harborage I and does not possess any property belonging to Harborage I.

Based on this denial, Jillian's should have been discharged pursuant to Minn.Stat. § 571.79(a) (2000), unless, prior to discharge, Johns had submitted a motion requesting leave to file a supplemental complaint. In all cases where a garnishee denies liability,

> the creditor may move the court at any time before the garnishee is discharged, on notice to both debtor and the garnishee for an order making the garnishee a party to the civil action and granting the creditor leave to file a supplemental complaint against the garnishee and the debtor. The supplemental complaint shall set forth the facts upon which the creditor claims to charge the garnishee. If probable cause is shown, the motion shall be granted.

Minn.Stat. § 571.75, subd. 4 (2000). Johns did not move to file a supplemental complaint because she had already succeeded in adding Jillian's to the original complaint.

■ We hold that the district court abused its discretion by not requiring Johns to follow the procedures set out in the garnishment statute and by granting Johns's post judgment, post appeal amendment to add Jillian's as a party to the original lawsuit. The garnishment statute provides the only authority for post-judgment addition of an alleged corporate successor to a judgment-debtor as a party, in a supplemental garnishment complaint. The process permitted by the district court allowed Johns to assert her discrimination claim against an entity that never had any opportunity to defend against the claim, a fundamental violation of due process.

■ Johns argues that even if the procedure she pursued is flawed, Jillian's is not prejudiced because proceeding under Minn.Stat. § 571.71 would have resulted in Jillian's being added as a party to the

supplemental complaint and summary judgment would have been pursued, putting Jillian's in the identical position that resulted from the process she chose. We disagree. Pursuing the garnishment statute would have focused the district court on the necessity to examine whether there is, in fact, probable cause to charge Jillian's as a garnishee. Johns was allowed merely to assert that Jillian's is Harborage I's successor in her amended complaint. Johns completely bypassed an analysis of whether Jillian's is a successor to Harborage I. Allowing Johns to proceed as she did caused the focus of the district court's analysis to be misplaced to an analysis of successor liability rather than an analysis of whether Jillian's is Harborage I's successor.

There is no evidence in the record sufficient to support Johns's bald assertion that Jillian's is Harborage I's successor. We conclude that Jillian's was substantially prejudiced by the flawed procedure and is entitled to reversal on the procedural issue alone.

Even if Johns's mere assertion of successorship is sufficient probable cause of successorship to permit Johns to pursue a supplemental complaint against Jillian's, Jillian's should have been granted summary judgment because, as a matter of law, it is not a successor to Harborage I.

## II. Jillian's is not Harborage I's successor

 Harborage, Inc. supplied labor and Harborage I managed Gators prior to Jillian's acquisition of the assets of FPM, Ltd. and other entities that allowed Jillian's to become the owner of Gators. Harborage I is not a party to the APA by which Jillian's acquired Gators, and Harborage I continued to exist as a separate corporation after Jillian's closed on the APA. Jillian's entered into a separate contract with Harborage I pursuant to which Harborage I provided transition management services and labor for Jillian's. Johns asserts that this separate contract made Harborage I a party to the APA because people were the only assets of Harborage I and those people were "acquired" by Jillian's when they became Jillian's employees. We disagree.

> A corporation is an artificial person, created by law, or under authority of law, as a distinct legal entity, with rights and liabilities which are independent from those of the natural persons composing the corporation. Ordinarily two or more corporations are considered separate and distinct entities even though the same individuals are the incorporators of, or own stock in, the several corporations, and even though such corporations may have the same persons as officers.

*Di Re v. Cent. Livestock Order Buying Co.*, 246 Minn. 279, 283–84, 74 N.W.2d 518, 523 (1956) (footnotes omitted) (holding that, in the absence of fraud or other wrongful purpose, a subsidiary must be treated as a legal entity separate and apart from the parent).

Johns also argues that Jillian's is the successor to Harborage I because the selling entities shared the same address as Harborage I and had the same persons as officers. But Johns does not allege fraud nor does she contend that Jillian's shared offices or officers with Harborage I or that Harborage I and any of the selling entities were a "single, integrated operation."

A "successor" corporation is:

> A corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation.

Black's Law Dictionary 1446 (7th ed.1999). Here, Jillian's did not amalgamate, consoli-

date or otherwise assume the rights and duties of Harborage I.

Johns completely ignores the requirement that Jillian's must be a *successor* to Harborage I and instead focuses on successor *liability* as established by federal case law for successor corporations. Johns erroneously imports an analysis of the factors that establish successor *liability* to assert that Jillian's is Harborage I's successor. The factors developed in federal case law for successor liability have *nothing* to do with determining whether a corporation is a *successor*. The federal cases cited by Johns all support her argument for *successor liability* but none are relevant to the issue of whether the new corporation is, in fact, a successor.

Johns has made a very persuasive case that the law of successor liability developed in federal courts for Title VII actions should apply to discrimination claims in Minnesota despite Minnesota's narrower approach to corporate successor liability. By statute:

> The transferee is liable for the debts, obligations, and liabilities of the transferor only to the extent provided in the contract or agreement between the transferee and transferor or to the extent provided by this chapter *or other statutes of this state.*

Minn.Stat. § 302A.661, subd. 4 (2000) (emphasis added). The Minnesota Human Rights Act, which by case law applies principles developed by federal courts in Title VII cases, may well be one of the "other statutes" referred to in Minn.Stat. § 302A.661, subd. 4, justifying application of federal successor liability law to discrimination claims in Minnesota. Under the facts of this case, however, we do not reach this issue.

## DECISION

Because Jillian's is not a successor to Harborage I, the district court erred by concluding that Jillian's is liable for Johns's judgments against Harborage I. Because Jillian's is not liable for the judgments against Harborage I, we do not reach Jillian's argument about the propriety of making it liable for the attorney fees' awards of the district court and this court.

**Reversed.**