In the Matter of the ENLARGEMENT AND INCREASING the NUMBER OF MANAGERS OF the BROWN'S CREEK WATERSHED DISTRICT IN WASHINGTON COUNTY Pursuant to Minnesota Statutes 103D.261 and .305.

No. C0–01–322.

Court of Appeals of Minnesota.

Sept. 11, 2001.

Mark J. Vierling, Eckberg, Lammers, Briggs, Wolff & Vierling, P.L.L.P., Stillwater, for relator Middle St. Croix River Water Management Organization.

Mike Hatch, Attorney General, Matthew B. Seltzer, Assistant Attorney General, St. Paul, for Minnesota Board of Water and Soil Resources.

Doug Johnson, Washington County Attorney, Richard D. Hodsdon, Assistant County Attorney, Washington County Government Center, Stillwater, for County of Washington.

Considered and decided by HARTEN, Presiding Judge, SCHUMACHER, Judge, and PETERSON, Judge.

## OPINION

PETERSON, Judge.

Respondent Minnesota Board of Water and Soil Resources (BWSR) granted respondent County of Washington's petitions to enlarge two watershed districts, Brown's Creek Watershed District and Valley Branch Watershed District. The enlarged watershed districts include property within the territories of two joint powers water management organizations (JP–WMOs), relator Middle St. Croix Valley Water Management Organization and Lower St. Croix Valley Water Management Organization.[1] In this certiorari appeal, Middle St. Croix argues that BWSR lacks the authority to assign to a watershed district territory within a JP–WMO. We reverse.

### FACTS

There are currently 11 water management organizations in Washington County, including Brown's Creek, Valley Branch, Middle St. Croix, and Lower St. Croix. Brown's Creek and Valley Branch are watershed districts. Middle St. Croix and Lower St. Croix are JP–WMOs. Under the joint-powers agreement that created Middle St. Croix in 1984, eleven communities authorized Middle St. Croix to manage their storm-water drainage and storm-water-regulatory-control systems pursuant to the Metropolitan Surface Water Management Act. Minn.Stat. §§ 473.875–.883 (1982); *see also* Minn.Stat. § 471.59 (1982) (joint-powers agreements).

In 1998, Washington County initiated a study of water governance in the county. The study identified several problems with JP–WMOs and both problems with and

1. The order enlarging Valley Branch also changed its name to Lower St. Croix Valley Watershed District. To avoid confusion between Lower St. Croix Valley Watershed District and Lower St. Croix Valley Water Management Organization, we will refer to Lower St. Croix Valley Watershed District as Valley Branch and Lower St. Croix Valley Water Management Organization as Lower St. Croix.

advantages of watershed districts. The study recommended that the number of water management units in the county should be reduced from 11 to six and that local water management units should be watershed districts, not JP–WMOs.

As part of implementing the study's recommendations, Washington County brought the petitions to enlarge Brown's Creek Watershed District and Valley Branch Watershed District. The county alleged that watershed districts would be more effective and efficient in managing water resources than were JP–WMOs. At the hearings on the petitions, Washington County Administrator James Schug and Washington County Planner Jane Harper testified about the reasons why Washington County sought to enlarge the watershed districts. They both testified that growth pressures require a comprehensive solution to water and natural resources management in the county. They explained that watershed districts will be large enough to be professionally staffed and to provide a full range of programs and that a professional staff will facilitate communication with citizens and communities and promote accountability. Schug also addressed how watershed districts can be structured to promote tax equity and uniform costs for watershed districts throughout the county.

Based on its conclusions that enlarging Brown's Creek and Valley Branch would further the public welfare, the public interest, and the purposes of Minn.Stat. chs. 103B and 103D, BWSR granted the county's petitions. The area added to Brown's Creek includes the northern part of Middle St. Croix's territory. The area added to Valley Branch includes the southern part of Middle St. Croix's territory and all of Lower St. Croix's territory.

## ISSUE

Did BWSR exceed its authority by enlarging the Brown's Creek and Valley Branch watershed districts to include territory already within the Middle St. Croix and Lower St. Croix water management organizations?

## ANALYSIS

■ Judicial review of a BWSR decision enlarging a watershed district is governed by Minn.Stat. § 14.69 (2000), which governs judicial review of agency decisions. *See In re Sauk River Watershed Dist.*, 400 N.W.2d 416, 418–19 (Minn.App. 1987) (establishment of watershed district). Under Minn.Stat. § 14.69, BWSR's decision will be reversed if it exceeds BWSR's statutory authority.

■ Statutory construction is a question of law subject to de novo review. *Stroud v. Hennepin County Med. Ctr.*, 556 N.W.2d 552, 555 (Minn.1996).

> When a statute is unambiguous, the court must give effect to the statute's plain meaning. But, when a statute is ambiguous, that is, when it is reasonably susceptible to more than one interpretation, the court must determine the probable legislative intent and construe the statute in a manner consistent with that intent.

*Astleford Equipment Co., Inc. v. Navistar Int'l Transp. Corp.*, 611 N.W.2d 33, 37 (Minn.App.2000), *aff'd in part, rev'd in part*, 632 N.W.2d 182 (Minn.2001) (citations omitted). "While statutory construction focuses on the language of the provision at issue, it is sometimes necessary to analyze that provision in the context of surrounding sections." *American Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 278 (Minn.2000).

> We are to read and construe a statute as a whole and must interpret each section

in light of the surrounding sections to avoid conflicting interpretations. Finally, courts should construe a statute to avoid absurd results and unjust consequences.

*Id.* at 277–78 (citations omitted).

 The boundaries of a watershed district located wholly within the metropolitan area can be changed pursuant to chapter 103D. Minn.Stat. § 103B.215, subd. 1 (2000). Minn.Stat. § 103D.261, subd. 2(a) (2000), grants BWSR the following authority to enlarge a watershed district:

> After [a public] hearing, if the board determines that the enlargement of the watershed district as asked for in the petition would be for the public welfare and public interest and the purpose of this chapter would be served, the board shall, by making findings and an order, enlarge the watershed district.

The parties dispute whether Minn.Stat. § 103D.261, subd. 2, permits enlargement of a watershed district by adding territory already within a JP–WMO. There is no claim that a JP–WMO ceases to exist if the territory within it is added to a watershed district.

 BWSR argues that Minn.Stat. § 103D.261 expressly contains only four requirements for enlargement of a watershed district: a petition by the county or other authorized party; service of the petition on specified parties; notice and a public hearing; and the requisite findings and order by BWSR. BWSR argues that the construction urged by Middle St. Croix would require this court to add language creating a fifth requirement for enlarging a watershed district, that the territory to

be added not be within a JP–WMO. This argument has merit if we consider only section 103D.261. But we must consider this section in light of surrounding sections. To address BWSR's argument, we must analyze Minn.Stat. §§ 103B.215, subd. 1, and 103D.261, subd. 2, in light of other provisions in chapters 103B and 103D.[2] And our analysis must:

> be guided by the "fundamental principle" that in interpreting a statute, form should not be exalted over substance and literal constructions should not override the general policy and objectives of the law.

*Krumm v. R.A. Nadeau Co.*, 276 N.W.2d 641, 643 (Minn.1979).

The powers that JP–WMOs and watershed districts may exercise overlap. Minn. Stat. § 103B.211, subd. 1(a) (2000), which applies to JP–WMOs, states:

> Any agreement under section 471.59 to jointly or cooperatively manage or plan for the management of surface water in a watershed delineated pursuant to subdivision 2, as required by sections 103B.205 to 103B.255, may provide, in addition to other provisions authorized by section 471.59, for a joint board having:
>
> (1) the authority to prepare, adopt, and implement a plan for the watershed meeting the requirements of section 103B.231[.]

In describing the powers that a JP–WMO can exercise to regulate land use and development in a watershed, to maintain and construct new drainage systems, and to conduct financial activities, Minn.Stat.

---

**2.** Middle St. Croix was created under Minn. Stat. §§ 473.875–.883 (1988). In 1990, the legislature repealed Minn.Stat. §§ 473.875–.883 and recodified water laws in chapter 103B.1990 Minn. Laws ch. 391, arts. 1–10. The legislature intended the recodification "to be a clarification and reorganization of provisions of laws affecting water" and did not intend the changes that were made "to alter the laws affecting water." 1990 Minn. Laws ch. 391, art. 10, § 1.

§ 103B.211, subd. 1(a)(3)-(7), specifically grants JP–WMOs the same powers granted to watershed districts under Minn.Stat. ch. 103D. Furthermore, Minn.Stat. § 103B.231, subd. 3(a) (2000), provides that, "Where a watershed management organization exists, the plan for the watershed must be prepared and adopted by the organization." The plan is subject to review by BWSR "for conformance with the requirements of sections 103B.205 to 103B.255, and chapter 103D." Minn.Stat. § 103B.231, subd. 9 (2000). After BWSR determines conformance with those requirements, the watershed management organization shall adopt and implement the plan. *Id.*, subd. 10.

A watershed district can also be authorized to prepare, adopt, and implement surface water management plans in a watershed. *See* Minn.Stat. § 103D.201, subds. 1–2 (2000) (general and specific purposes of watershed districts). When a watershed district is established for that purpose, its managers must adopt a watershed management plan. Minn.Stat. § 103D.401, subd. 1 (2000). The plan is subject to approval by BWSR. *Id.*, subd. 5. Upon approval, the plan becomes the watershed management plan for the watershed district. *Id.*

Because both JP–WMOs and watershed districts have authority to adopt and implement water management plans, enlarging a watershed district to include territory within a JP–WMO would create a situation where two entities have authority to perform the same water management tasks for the same territory. In light of the general policy and objective of chapters 103B and 103D to provide water management, we conclude that the legislature did not intend to allow two water management organizations to have concurrent authority to perform water management tasks for the same territory.

At a minimum, doing so would be inefficient and, at the extreme, it could result in conflicting water management plans that call for different things to be done at a single location. In that situation, it could be impossible to implement the conflicting plans. We, therefore, construe Minn.Stat. § 103D.261, subd. 2(a), as not authorizing BWSR to enlarge a watershed district to include territory already within a JP–WMO when both the watershed district and the JP–WMO would be performing the same water management functions. *See* Minn.Stat. § 645.17(1) (2000) ("legislature does not intend a result that is absurd, impossible of execution, or unreasonable").

Although BWSR did not make any findings on the functions to be performed by Brown's Creek and Valley Branch, the record shows that Brown's Creek, Valley Branch, Middle St. Croix, and Lower St. Croix are all authorized to manage surface water. We recognize that the county presented evidence that watershed districts would be more effective and efficient than JP–WMOs in managing water resources, but we, nevertheless, conclude that BWSR erred in granting the petitions to enlarge Brown's Creek and Valley Branch because expanding the watershed districts into territory already within JP–WMOs creates conflicting surface-water-management authorities.

**DECISION**

BWSR exceeded its statutory authority in granting Washington County's petitions to enlarge Brown's Creek and Valley Branch to include territory already within JP–WMOs.

**Reversed.**