In the Matter of Petitions for Enlargement of the VALLEY BRANCH WATERSHED DISTRICT and Enlargement and Increase in Number of Managers of the South Washington Watershed District, Washington County, pursuant to Minnesota Statutes Sections 103D.261 and 103D.305.

No. A09–1175.

Court of Appeals of Minnesota.

May 4, 2010.

Mark J. Vierling, Kevin S. Sandstrom, Eckberg, Lammers, Briggs, Wolff & Vierling P.L.L.P., Stillwater, MN, for relator City of Woodbury.

Lori Swanson, Attorney General, Thomas K. Overton, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Board of Water and Soil Resources.

Douglas Johnson, Washington County Attorney, Linda Carlson Krafthefer, Assistant County Attorney, Stillwater, MN, for respondent Washington County.

Raymond O. Marshall, Lawson, Marshall, McDonald, Galowitz & Wolle, Lake Elmo, MN, for respondent Valley Branch Watershed District.

John W. Clinton, Jack W. Clinton P.A., Woodbury, MN, for respondent South Washington Watershed District.

Considered and decided by WRIGHT, Presiding Judge; SCHELLHAS, Judge; and LARKIN, Judge.

## OPINION

WRIGHT, Judge.

This is an appeal from a final decision of respondent Minnesota Board of Water and Soil Resources (BWSR). BWSR's order enlarges two watershed districts to absorb an area covered by a dissolving watershed-management organization and increases the number of watershed-district managers in one of the enlarged watershed districts. Relator City of Woodbury (the city) challenges BWSR's decision, arguing that it was made using unlawful procedure and constitutes an error of law because BWSR permitted its authority to be improperly limited and failed to adequately articulate its reason for granting the enlargement petitions. The city also argues that the decision was arbitrary and capricious and not supported by substantial evidence because it was politically motivated and inconsistent with relevant hydrological facts. In challenging BWSR's decision to increase the number of managers in one of the watershed districts, the city also maintains that the decision was arbitrary and capricious and unsupported by substantial evidence. We affirm.

## FACTS

In March 2009, respondent Washington County petitioned BWSR to enlarge the South Washington Watershed District (SWWD) and the Valley Branch Watershed District (VBWD) to cover a 45–square–mile area that was managed by the Lower St. Croix Watershed Management Organization (LSCWMO). The petitions proposed apportioning most of the LSCWMO area to SWWD and adding two managers to SWWD's board of managers. The petitions also indicated that LSCWMO agreed to dissolve if BWSR approved the enlargement petitions as submitted.

All of the local governmental units in the LSCWMO area declared their support for enlargement of the watershed districts. Although the city, which is located almost entirely within the pre-existing SWWD, supported the enlargement of SWWD and VBWD to absorb the area that had been managed by LSCWMO, it requested that BWSR reject the enlargement petitions because the city opposed the proposed allocation of the LSCWMO area between the two watershed districts. The city argued that the area should be divided along the major hydrological boundary dividing the St. Croix River and Mississippi River watersheds, rather than along the minor hydrological boundary proposed in the enlargement petitions. After a public hearing and an internal-review process, BWSR issued findings of fact and conclusions of law approving the enlargement petitions and granted the request to add two members to SWWD's board. This certiorari appeal followed.

## ISSUES

I. Was BWSR's decision to grant the petitions to enlarge SWWD and VBWD made using unlawful procedure or affected by an error of law?

II. Was BWSR's decision to grant the petitions to enlarge SWWD and VBWD arbitrary, capricious, or unsupported by substantial evidence?

III. Was BWSR's decision to increase the number of managers in SWWD arbitrary, capricious, or unsupported by substantial evidence?

## ANALYSIS

A final decision of BWSR is subject to certiorari review under Minn.Stat. § 14.69 (2008). Minn.Stat. § 103D.111, subd. 2 (2008); *In re Brown's Creek Watershed Dist. in Washington County*, 633 N.W.2d 76, 78 (Minn.App.2001) (discussing

review of decision to enlarge watershed district). We, therefore, review the record to determine whether BWSR's decision was made using an unlawful procedure, affected by an error of law, unsupported by substantial evidence, or arbitrary or capricious. Minn.Stat. § 14.69. An agency decision generally enjoys a presumption of correctness and will not be reversed unless the party challenging the decision establishes one of the statutory bases for doing so. *City of Moorhead v. Minn. Pub. Utils. Comm'n,* 343 N.W.2d 843, 849 (Minn.1984) (stating burden of proof); *CUP Foods, Inc. v. City of Minneapolis,* 633 N.W.2d 557, 562 (Minn.App.2001) (stating presumption), *review denied* (Minn. Nov. 13, 2001).

## I.

The city first argues that BWSR's decision was made using an unlawful procedure or affected by an error of law because (a) BWSR's authority was improperly and "artificially" restricted and (b) BWSR's findings failed to adequately address the city's concerns about the petitions. We address each of these arguments in turn.

## A.

■ In challenging the enlargement proceeding, the city contends that BWSR's authority to address the enlargement petitions was improperly restricted by LSCWMO's agreement to dissolve only if BWSR approved Washington County's enlargement petitions as submitted. Although we agree that LSCWMO's dissolution contingency was relevant to BWSR's decision-making authority, we do not agree that it had the unlawful effect that the city asserts.

■ Under Minnesota law, BWSR lacks the authority to enlarge a watershed district into an area managed by another watershed-management organization. *See Brown's Creek,* 633 N.W.2d at 80 (citing Minn.Stat. § 103D.261, subd. 2(a) (2000)) (holding that two watershed-management organizations cannot simultaneously perform the same management functions). Because BWSR could not grant the enlargement petitions unless LSCWMO agreed to dissolve,[1] LSCWMO's agreement to dissolve only if BWSR granted the petitions as submitted meant that BWSR's options were limited—either grant Washington County's proposals or maintain LSCWMO watershed management in the area. The city contends that LSCWMO's conditional-dissolution agreement improperly and "artificially" restricted BWSR's authority by preventing BWSR from independently defining the most appropriate boundary between SWWD and VBWD upon LSCWMO's dissolution. But if LSCWMO's condition merely is coincident with the limits of BWSR's authority, the city's argument fails. We, therefore, consider whether BWSR has the statutory authority to establish the boundaries of a watershed district when a petition to enlarge a watershed district is presented for approval. The scope of an agency's statutory authority presents a question of law, which we review de novo. *See In re Qwest's Wholesale Serv. Quality Standards,* 702 N.W.2d 246, 259 (Minn.2005) (stating that whether agency acts within statutory authority is question of law).

■ Administrative agencies, such as BWSR, are "creatures of statute" and have "only those powers given to them by the legislature." *In re Hubbard,* 778 N.W.2d 313, 318 (Minn.2010). To determine what

---

1. As in *Brown's Creek,* "[t]here is no claim that a [watershed-management organization] ceases to exist if the territory within it is added to a watershed district." 633 N.W.2d at 79.

those powers include, we first look to the plain language of the authorizing statute. *ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005) ("The touchstone for statutory interpretation is the plain meaning of a statute's language."); *see also* Minn.Stat. § 645.08(1) (2008) (providing that words are construed according to their common usage). An agency's authority may either be expressly stated in the statute or implied from the expressed powers. *Hubbard,* 778 N.W.2d at 318. But if the statutory language leaves any uncertainty as to an agency's authority, we resolve that uncertainty "against the exercise of such authority." *Qwest,* 702 N.W.2d at 259.

BWSR's authority to enlarge an existing watershed district derives principally from Minn.Stat. § 103D.261.[2] *Brown's Creek,* 633 N.W.2d at 79. · Section 103D.261 provides that proceedings to enlarge an existing watershed district "must be initiated by a petition filed with [BWSR]." Minn. Stat. § 103D.261, subd. 1(a). The petition must specify the area to be added, and only local governmental units or residents from that area may file the petition. Minn.Stat. §§ 103D.205, subd. 3, 103D.261, subd. 1(a) (2008). If BWSR "determines that the enlargement of the watershed district as asked for in the petition would be for the public welfare and public interest" and would serve the purpose of the Watershed Law, Minn.Stat. § 103D.001–.925 (2008), BWSR "shall ... enlarge the watershed district," Minn.Stat. § 103D.261, subd. 2(a). Conversely, if BWSR determines that a proposed watershed-district enlargement "would not benefit the public

welfare and public interest, or would not serve the purpose" of the Watershed Law, BWSR "must" dismiss the enlargement petition.· Minn.Stat. §§ 103D.231 (requiring dismissal of establishment proceeding), 103D.261, subd. 1(b) (requiring that enlargement petitions be addressed the same as establishment petitions).

The plain language of Minn.Stat. § 103D.261 does not expressly authorize BWSR to modify any aspect of an enlargement petition. Nor can the statute be read to imply any such authority. To the contrary, section 103D.261 limits BWSR's authority to determining if "the enlargement ... asked for in the petition" is appropriate; if it is, BWSR is required to "enlarge the watershed district." Minn. Stat. § 103D.261, subd. 2(a). Although the statute does not expressly limit BWSR's authority to order only the enlargement sought, the legislature's use of the term "the enlargement" signals that BWSR must consider the enlargement specified in the petition, not other enlargement options that could have been sought. *See State v. McCurry,* 770 N.W.2d 553, 560 (Minn.App. 2009) (stating that the definite article is more specific and denotes particular, specified persons or things), *review denied* (Minn. Oct. 28, 2009). It strains logic and the language of the statute to conclude that BWSR is authorized to order an enlargement different from the particular one sought in the petition based on its determination that the one sought in the petition does not establish the optimal boundaries for enlargement or is inappropriate. *See* Minn.Stat. § 645.17(1) (2008) (stating presumption that legislature does

---

**2.** BWSR also may enlarge the boundaries of an existing watershed district pursuant to Minn.Stat. § 103B.215 (2008), which applies to metropolitan-area watershed districts. Although the areas concerned here are within the metropolitan area, it is undisputed that the administrative proceedings were conduct-

ed under Minn.Stat. § 103D.261. *See* Minn. Stat. § 103B.215, subd. 1 (permitting boundary change under "this section or chapter 103D"). Accordingly, our analysis addresses only Minn.Stat. § 103D.261 and related provisions.

not intend absurd or unreasonable result). Rather, when BWSR considers a petition to enlarge an existing watershed district, it must ascertain whether the specific watershed-district enlargement detailed in the petition serves the public welfare, the public interest, and the purpose of the Watershed Law. After doing so, BWSR must either grant or dismiss the petition before it based on those criteria. BWSR has not been granted statutory authority to modify the enlargement petition.

Because section 103D.261 does not authorize BWSR to modify a petition to enlarge a watershed district or to define its own parameters for enlarging a watershed district, BWSR's decision to grant the petitions without doing so here, even if attributable to LSCWMO's conditional dissolution, was not the product of unlawful procedure or an error of law.

### B.

 The city also urges us to reverse BWSR's decision because BWSR failed to provide sufficient factual findings or adequately confront and rebut the concerns that the city raised during the hearing process. An administrative agency "must explain on what evidence it is relying and how that evidence connects rationally with the agency's choice of action to be taken." *Hiawatha Aviation of Rochester, Inc. v. Minn. Dep't of Health,* 375 N.W.2d 496, 501 (Minn.App.1985) (quotation omitted), *aff'd,* 389 N.W.2d 507 (Minn.1986). A decision that is not supported by proper findings is considered " 'prima facie arbitrary,' " requiring the agency to bear the burden of proof on appeal. *Carter v. Olmsted County Hous. & Redev. Auth.,* 574 N.W.2d 725, 730 (Minn.App.1998) (quoting *White Bear Rod & Gun Club v. City of Hugo,* 388 N.W.2d 739, 742–43 n. 5 (Minn. 1986)).

Although BWSR's findings are limited, they nonetheless demonstrate the various factors that BWSR considered in making its decision, including the city's objections. BWSR also clearly stated its reason for ordering the enlargements. In light of our conclusion that BWSR lacked the authority to do more than reject or accept the petitions, further explanation of why the city's arguments against one aspect of the proposed enlargements did not persuade BWSR to reject enlargements that satisfy the statutory criteria was unnecessary. BWSR's findings are sufficient to demonstrate its rationale for determining that the petitions serve the public welfare and the purpose of the Watershed Law. The city's arguments to the contrary, therefore, fail.

### II.

 The city also challenges BWSR's enlargement order as arbitrary and capricious. An agency's decision is arbitrary and capricious when it represents the agency's will, rather than its judgment. *In re Max Schwartzman & Sons, Inc.,* 670 N.W.2d 746, 753 (Minn.App.2003). For example, a decision is arbitrary and capricious when the agency (1) relies on factors that are not intended by the legislature; (2) fails to consider an important aspect of the problem; (3) offers an explanation that is counter to the evidence; or (4) makes a decision so implausible that it cannot be explained as a divergent view or founded on the agency's expertise. *Citizens Advocating Responsible Dev. v. Kandiyohi County Bd. of Comm'rs,* 713 N.W.2d 817, 832 (Minn.2006).

 The city contends that BWSR acted arbitrarily and capriciously by ordering the enlargement of SWWD and VBWD because its decision "was not supported by any of the purposes enumerated in Minn. Stat. § 103D.201." But Minn.Stat.

§ 103D.201 does not apply to enlargement proceedings in the manner that the city suggests. Section 103D.201 authorizes BWSR to *establish* watershed districts for the purpose of "conserv[ing] the natural resources of the state by land use planning, flood control, and other conservation projects by using sound scientific principles for the protection of the public health and welfare and the provident use of the natural resources." Minn.Stat. § 103D.201, subd. 1. Section 103D.201 also separately sets forth 14 reasons for which BWSR may *establish* a new watershed district. *Id.*, subd. 2. The agency action at issue here, however, is enlargement of existing watershed districts, not their establishment. To enlarge an existing watershed district, BWSR need only find that a proposed enlargement "would be for the public welfare and public interest" and would serve "the purpose of this chapter." Minn.Stat. § 103D.261, subd. 2(a).

The record reflects that BWSR considered and complied with the requirements of Minn.Stat. § 103D.261, subd. 2(a). After reviewing and relying on the staff and committee findings regarding the enlargement petitions, BWSR concluded that the enlargements would benefit the public welfare and public interest and serve "the purposes of Minnesota Statutes Chapters 103B and 103D." *See* Minn.Stat. § 103B.201 (2008) (stating purposes of metropolitan water management program, including achieving effective and uniform management policies). As the basis for its determination that these statutory criteria were met, BWSR found that SWWD and VBWD "will accomplish more in the area of watershed management" than LSCWMO had. BWSR did not act arbitrarily or capriciously by ordering the enlargement of SWWD and VBWD to ensure better management of the LSCWMO area.

The city asserts that, notwithstanding this stated reason, BWSR's real motivation in ordering the enlargement was political because the boundary between the new portions of SWWD and VBWD runs along political rather than major hydrological boundaries. We disagree. The boundary specified in an enlargement petition reflects the motivations of those submitting the petition to BWSR. Although the local governmental units that are authorized to bring enlargement petitions may utilize political processes to determine when and where to establish a different boundary, *see* Minn.Stat. §§ 103D.205, subd. 3, 103D.261, subd. 1 (requiring that petitions be filed and signed by counties, cities, or residents within affected area), it does not necessarily follow that BWSR's decision is politically motivated. The city has not demonstrated that any political motivation that may have affected the enlargement petitions had any bearing on BWSR's decision to grant them. When, as here, BWSR's watershed-district enlargement decision is based on the expertise of its staff and its own determination that the statutory criteria for enlargement have been met, its decision will not be disturbed.

[11–13] We also reject the city's contention that BWSR's enlargement order is not supported by substantial evidence because it accepted a boundary that does not run along major hydrological lines. Substantial evidence is "(1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; (2) more than a scintilla of evidence; (3) more than some evidence; (4) more than any evidence; or (5) the evidence considered in its entirety." *Minn. Ctr. for Envtl. Advocacy v. Minn. Pollution Control Agency,* 644 N.W.2d 457, 466 (Minn.2002). We will sustain an agency's decision if it is supported by substantial evidence. *In re*

*Claim for Benefits by Meuleners,* 725 N.W.2d 121, 123 (Minn.App.2006).

The record reflects that the city and all of the local governmental units in the LSCWMO area agree that Washington County watershed districts should be enlarged to consolidate watershed-management authority and provide more effective and efficient watershed management. They also agree that SWWD and VBWD should be enlarged to absorb the LSCWMO area. And the city acknowledges that the watershed-district enlargements, even with the boundary to which the city objected, will yield some benefit. The possibility that a better boundary could have been established if BWSR had rejected Washington County's enlargement petitions does not undermine the uncontested evidence that the watershed-district enlargements produce a net benefit. Our review of the record establishes that there is substantial support for BWSR's determination that the watershed-district enlargements will benefit the public and the purposes of the Watershed Law by ensuring better management of the LSCWMO area.

Contrary to its arguments, the city has not established that BWSR's decision to grant the enlargement petitions was arbitrary and capricious or unsupported by substantial evidence.

### III.

Finally, the city challenges BWSR's decision to grant Washington County's request to increase the number of managers in SWWD from five to seven. The city contends that this decision also was arbitrary, capricious, and unsupported by substantial evidence.

BWSR may increase the number of managers in a watershed district upon a petition requesting such an increase. Minn.Stat. § 103D.305, subd. 1 (2008). If BWSR determines "that an increase in the number of managers would benefit the public welfare, public interest, and the purpose of this chapter, [BWSR] must increase the number of managers." *Id.,* subd. 5(a) (2008).

BWSR concluded that the increase in managers was warranted because "the various hydrologic units [in SWWD] will have better representation and there will be more continuity with veteran managers and newly appointed managers." The record reflects that BWSR's enlargement order not only substantially enlarged SWWD but also added an area to SWWD that contains the confluence of two major rivers, karst topography, and dangerous chemicals in groundwater. BWSR's decision to increase the number of managers in SWWD to better address the hydrological complexity in the newly enlarged SWWD is supported by substantial evidence in the record.

Minnesota law requires that managers of watershed districts "entirely within the metropolitan area" be appointed "to fairly represent the various hydrologic areas within the watershed district by residence of the manager appointed." Minn.Stat. § 103D.311, subd. 3(c) (2008). Without citation to the record, the city asserts that BWSR's increase in the number of managers was arbitrary and capricious because the existing managers were appointed at large and additional managers would provide no better representation for the various hydrologic units.

The city relies on the preliminary opinion in the report of BWSR staff that increasing the number of managers in SWWD was unnecessary. The record reflects, however, that the water planning committee that reviewed this report rejected this finding and found the increase warranted for the same reasons BWSR

426

ultimately concluded. And the record supports the water planning committee's recommendation and BWSR's decision. Accordingly, BWSR did not act arbitrarily or capriciously by deviating from the BWSR staff recommendation. *See In re Review of 2005 Annual Automatic Adjustment of Charges for All Elec. & Gas Utils.*, 768 N.W.2d 112, 120 (Minn.2009) (stating that "[i]f there is room for two opinions on a matter," a decision is not arbitrary and capricious "even though the court may believe that an erroneous conclusion was reached"). Having failed to demonstrate that BWSR's decision to add managers to SWWD will do anything other than effectuate the statutory requirements for appointing watershed district managers, the city's argument is unavailing. The city has not established that BWSR's decision to grant the increase in the number of SWWD managers is arbitrary, capricious, or unsupported by substantial evidence in the record.

## DECISION

The Minnesota Board of Water and Soil Resources is neither authorized to modify the enlargement petitions presented nor to enlarge a watershed district into an area managed by another watershed-management organization. Minn.Stat. § 103D.261, subd. 2(a). The Minnesota Board of Water and Soil Resources, therefore, did not err by accepting the watershed-district enlargements as proposed because they serve the public welfare, the public interest, and the purposes of the Watershed Law. The Minnesota Board of Water and Soil Resources' enlargement decision is adequately explained in its order, is not arbitrary and capricious, and is supported by substantial evidence. In addition, the decision of the Minnesota Board of Water and Soil Resources to increase the number of managers in the South

Washington Watershed District is supported by substantial evidence.

**Affirmed.**