**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0375**

In the Matter of the Unlicensed Debt Collection
Activity of PurCo Fleet Services, Inc.

**Filed November 24, 2025**
**Affirmed**
**Frisch, Chief Judge**

Department of Commerce
File No. 74633

Katherine S. Barrett Wiik, Douglas D. Anderson, Saul Ewing LLP, Minneapolis, Minnesota; and

Stephen K. Christiansen (pro hac vice), Christiansen Law, PLLC, Salt Lake City, Utah (for relator PurCo Fleet Services, Inc.)

Keith Ellison, Attorney General, Stephen D. Melchionne, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Commerce)

Considered and decided by Ede, Presiding Judge; Frisch, Chief Judge; and Cochran, Judge.

## SYLLABUS

1.      An entity that seeks to receive payment on any pecuniary obligation for others, including a rental-vehicle damage claim, is engaged in the collection of "any . . . other indebtedness" and thus is a "collection agency" under Minn. Stat. § 332.31, subd. 3 (2024), regardless of whether such indebtedness is liquidated.

2.      An entity that agrees to undertake efforts to collect a debt originally owned by another and remit to the original debtholder some or all amounts collected on that

indebtedness is engaged in collection "for others" and thus is a "collection agency" within the meaning of Minn. Stat. § 332.31, subd. 3.

3.    An entity that contracts with a Minnesota business to undertake efforts to collect a debt for the benefit of another or engages in debt collection originating from a transaction occurring in Minnesota is subject to regulation under Minn. Stat. §§ 332.31-.44 (2024), Minnesota's collection agency statutes.

**OPINION**

**FRISCH**, Chief Judge

In this certiorari appeal, relator challenges a cease-and-desist order issued by the Minnesota Commissioner of Commerce (the commissioner), prohibiting relator from conducting business in Minnesota absent licensure as a "collection agency" under Minn. Stat. §§ 332.31-.44, Minnesota's collection agency statutes.[1]  Relator asserts that it is not a "collection agency" within the meaning of Minn. Stat. § 332.31, subd. 3, and it did not conduct business "in Minnesota" within the meaning of Minn. Stat. § 332.33, subd. 1. Relator also asserts that Minnesota's collection agency statutes are unconstitutionally vague as applied to relator.  Because the undisputed facts establish that relator engaged in the business of debt collection for others in Minnesota under the plain and unambiguous

---

[1] In 2021, the Legislature amended Minnesota's collection agency statutes to encompass "debt buyers" in addition to "collection agencies" within this regulatory scheme.  2021 Minn. Laws 1st Spec. Sess. ch. 4, art. 5, §§ 1-21, at 1064-71.  We refer to the current version of Minnesota's collection agency statutes, the operative terms of which are substantially similar to the predecessor statutes.

2

meaning of Minnesota's collection agency statutes, and these statutes are not unconstitutionally vague as applied to relator, we affirm.

## FACTS[2]

### *Relator's Business Practices Pursuant to its Agreement for Services*

Relator PurCo Fleet Services is a Utah corporation that provides a variety of services to the vehicle rental industry. Pursuant to a standard "Agreement for Services" (agreement) between relator and its vehicle rental company clients, relator provides "loss prevention, vehicle damage claim adjusting and collection" services. The record contains various iterations of the agreement between relator and its clients, and relator uses different terms interchangeably within those agreements, including "collect," "collection," "recover," and "recovery." Relator does not contest on appeal that it is engaged in "collection" within the meaning of Minn. Stat. § 332.31, subd. 3. At issue in this action are the collection services provided by relator to its vehicle rental company clients.[3]

Pursuant to the agreement, a vehicle-rental company assigns to relator claims, rights, and causes of action relating to "Files." A "File" is "a claim for damage to a specific motor vehicle, and includes all documentation relating to the claim." The agreement provides that relator shall "[p]rocess all Files promptly," obligating relator "to collect money for damage to a motor vehicle from any liable person by any lawful means

---

[2] The following facts were submitted at summary disposition and are not disputed on appeal.

[3] We recognize that relator provides business services for the benefit of vehicle rental companies other than debt-collection activities at issue in this action. Those activities are not the subject of this appeal.

available." For clarity, we refer to these "Files" as rental-vehicle damage claims or damage claims.

If relator successfully collects on a rental-vehicle damage claim, it is required under the agreement to segregate the recovered funds in a trust account. Relator is then contractually obligated to disperse collected "money due ***Client***" by delivering to the vehicle rental company the funds recovered by relator and held in its trust account, less a specified portion of recovered funds to be retained by relator "as compensation for its services." The vehicle rental company client has a contractual right to audit relator's trust account holding collected funds. And the client retains the right to "access any of its [damage claims] in [relator's] possession." The client also has the right to terminate the agreement at any time, and the agreement provides that upon termination, relator must return to the client all "uncollected" rental-vehicle damage claims.

***Relator's Business in Minnesota***

Relator has entered into the agreement with at least five Minnesota vehicle rental company clients. In August 2021, a consumer rented a vehicle in Duluth from one such client. The consumer was not a Minnesota resident. In September 2021, relator sent a letter to the consumer that provided: "We are attempting to collect a debt." The letter informed the consumer of damage to the rental vehicle, specified an amount of damage, and instructed the consumer to send a check payable to relator to cover the amount of damage.

The consumer thereafter retained an attorney. In June 2022, the consumer's attorney sent a letter to relator demanding that relator cease and desist from unlawful debt-

4

collection activities and copied the Minnesota Department of Commerce (the department). The department determined that relator has not, and has never been, licensed by the department in any capacity. In November 2023, the commissioner determined that relator had conducted business in Minnesota as a collection agency without the required license in violation of Minn. Stat. § 332.33, subd. 1, and issued a cease-and-desist order prohibiting relator from acting or holding itself out as a collection agency in Minnesota without a license.

Relator requested a hearing by an administrative-law judge (ALJ) pursuant to Minn. Stat. § 45.027, subd. 5a(b) (2024). In June 2024, relator and the department cross-filed motions for summary disposition. In October 2024, the ALJ issued a recommendation to grant the department's motion for summary disposition and deny relator's motion for summary disposition. In February 2025, the commissioner granted summary disposition to the department, denied summary disposition to relator, and made the cease-and-desist order permanent. The commissioner adopted in their entirety the findings of fact and conclusions of law contained in the ALJ's recommendation.

This certiorari appeal follows.

**ISSUES**

I.    Did the commissioner err in determining that relator conducted business as a "collection agency" under Minnesota's collection agency statutes?

II.    Did the commissioner err in determining that relator conducted business as a collection agency "in Minnesota"?

III.    Are Minnesota's collection agency statutes unconstitutionally vague as applied to relator?

5

**ANALYSIS**

Relator argues that because it is not a "collection agency" and did not conduct business as a collection agency "in Minnesota" under the plain and unambiguous meaning of Minnesota's collection agency statutes, the commissioner had no authority to issue a cease-and-desist order to relator. It further argues that Minnesota's collection agency statutes are unconstitutionally vague as applied to relator. The commissioner responds that relator engaged in the business of debt collection for others in Minnesota and therefore was required to obtain licensure from the department as a collection agency.

The scope of our review in this certiorari appeal is governed by the Minnesota Administrative Procedure Act (MAPA), Minn. Stat. §§ 14.001-.69 (2024). *See* Minn. Stat. § 45.027, subd. 5a(d) (2024); *In re Gillette Children's Specialty Healthcare*, 883 N.W.2d 778, 785 (Minn. 2016) ("On review from an order granting summary disposition, the scope of our review is governed by MAPA."). We presume the commissioner's decision to be correct, though we may reverse or modify the commissioner's decision if it "violates the constitution, exceeds the agency's statutory authority or jurisdiction, is based on an erroneous theory of law, is not supported by substantial evidence, or is arbitrary and capricious." *Mattice v. Minn. Prop. Ins. Placement*, 655 N.W.2d 336, 339-40 (Minn. App. 2002) (citing Minn. Stat. § 14.69 (2002)), *rev. denied* (Minn. Mar. 18, 2003); *see also In re Valley Branch Watershed Dist.*, 781 N.W.2d 417, 421 (Minn. App. 2010) ("An agency decision generally enjoys a presumption of correctness and will not be reversed unless the party challenging the decision establishes one of the statutory bases for doing so."). The

6

party seeking review on appeal has the burden of proving that the commissioner's decision meets one or more of these statutory bases. *See Mattice*, 655 N.W.2d at 340.

The commissioner is authorized to issue a cease-and-desist order "[w]henever it appears to the commissioner that a person has engaged or is about to engage in an act or practice constituting a violation of a law, rule, or order related to the duties and responsibilities entrusted to the commissioner." Minn. Stat. § 45.027, subd. 5a(a) (2024); *see* Minn. Stat. § 332.311 (providing the commissioner with the powers, duties, and responsibilities enumerated under Minnesota's collection agency statutes). Following an administrative proceeding—if requested—"the commissioner shall issue a further order vacating or making permanent the cease and desist order." Minn. Stat. § 45.027, subd. 5a(b). Pursuant to Minn. Stat. § 332.33, subd. 1, "no person shall conduct business in Minnesota as a collection agency . . . as defined in sections 332.31 to 332.44, without having first applied for and obtained a collection agency license."

The commissioner determined that relator violated Minn. Stat. § 332.33, subd. 1, by conducting business in Minnesota as a collection agency without the required license, and thereafter issued a permanent cease-and-desist order to relator prohibiting it from acting or holding itself out as a collection agency in Minnesota until it obtains licensure. Relator argues that the commissioner's decision is based on an erroneous theory of the law, namely, that the commissioner's interpretation of Minnesota's collection agency statutes is erroneous. First, relator argues it is not a "collection agency" as defined by Minnesota's collection agency statutes. *See* Minn. Stat. § 332.31, subd. 3. Second, relator argues it did not conduct business as a collection agency "in Minnesota" such that licensure was

7

required under Minn. Stat. § 332.33, subd. 1. This appeal therefore involves interpretation and application of statutes to undisputed facts—"questions of law that we review de novo." *Mattice*, 655 N.W.2d at 340; *see also In re NorthMet Project Permit to Mine Application*, 959 N.W.2d 731, 757 (Minn. 2021). We also review de novo relator's argument that Minnesota's collection agency statutes are unconstitutionally vague as applied to relator. *State v. Campbell*, 756 N.W.2d 263, 268 (Minn. App. 2008) ("Constitutional challenges are questions of law, which we review de novo."), *rev. denied* (Minn. Dec. 23, 2008).

Against this backdrop, we address each of relator's arguments in turn.

## I.   Relator conducted business as a "collection agency" within the plain meaning of Minn. Stat. § 332.31, subd. 3.

Relator argues that the commissioner erred by determining that relator conducted business as a "collection agency" as defined by Minnesota's collection agency statutes, Minn. Stat. §§ 332.31-.44. A "collection agency" is, in relevant part, "a person engaged in the business of collection for others any account, bill, or other indebtedness." Minn. Stat. § 332.31, subd. 3. Stated differently, a "collection agency" is a person engaged in the business of (1) collection, (2) for others, (3) of any account, bill, or other indebtedness.

The parties agree that the statute is unambiguous. For the reasons set forth below, we agree. And relator agrees that it participates in the business of "collection" because it engages in activities seeking to recover payment on rental-vehicle damage claims. But relator argues that it is not a "collection agency," and therefore is not subject to Minnesota's collection agency statutes, because it is not involved in the business of collection of "any

8

account, bill, or other indebtedness" or that its collection activities are "for others." We disagree.

**A.** **Relator is involved in the collection of "any . . . other indebtedness."**

Relator argues that its collection activities are not on "any account, bill, or other indebtedness" as set forth in Minn. Stat. § 332.31, subd. 3. The commissioner determined that relator's business activities of seeking recovery on rental-vehicle damage claims constitute the collection of "indebtedness" within the meaning of the statute. We begin by interpreting the meaning of the statutory term "indebtedness" and then consider whether relator's business activities include the collection of any other indebtedness.

Minnesota's collection agency statutes do not specifically define the term "indebtedness." "When a statute does not define terms, we may look to the dictionary definition of those words to determine if a statute has a plain, unambiguous meaning." *State v. Abdus-Salam*, 1 N.W.3d 871, 877 (Minn. 2024); *see also Laymon v. Minn. Premier Props., LLC*, 913 N.W.2d 449, 453 (Minn. 2018). Dictionary definitions of "indebtedness" reveal the term is commonly defined as something owed to another that is generally pecuniary in nature. *The American Heritage Dictionary of the English Language* 891 (5th ed. 2018) (defining "indebtedness" as "[t]he state of being indebted" and "[s]omething owed to another"); *Black's Law Dictionary* 914 (12th ed. 2024) (defining "indebtedness" as "1. The quality, state, or condition of owing money. 2. Something owed; a debt.").

We also consider the entirety of the Minnesota collection agency statutes to discern the meaning of "any . . . other indebtedness." *See State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) ("The statutory language in dispute is not examined in isolation; rather, all

9

provisions in the statute must be read and interpreted as whole."). Section 332.31, subdivision 3, encompasses "*any* account, bill, or other indebtedness." *See State v. Stay*, 935 N.W.2d 428, 432 (Minn. 2019) ("Under the series-qualifier rule, when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series."). As the supreme court has recently explained, "using the word 'any' demonstrates an intent to be inclusive, not restrictive. When used in the affirmative, 'any' means every or all. Because 'any' is all-encompassing, we give the word broad application, regardless of whether we consider the result reasonable." *In re Welfare of Child of B.D.D.*, 25 N.W.3d 707, 712 (Minn. 2025) (quotations and citations omitted). We therefore conclude that the statute broadly captures "any . . . other indebtedness," and references "every" thing or "all" things pecuniary in nature that may be owed.

This construction is consistent with the broad interpretation of "indebtedness" adopted by the Minnesota Supreme Court in the contract-interpretation context. In *Bell v. Mendenhall*, the supreme court observed that "[i]ndebtedness is a word of large meaning, and is used to denote almost any kind of pecuniary obligation originating in contract." 80 N.W. 843, 844 (Minn. 1899). And in *McCrea v. First National Bank*, the supreme court held that "'[i]ndebtedness' means a state of being indebted or a sum owed." 203 N.W. 220, 220 (Minn. 1925) (interpreting promissory note assigned as collateral). We discern no principled reason to ascribe a narrower interpretation of "indebtedness" than the interpretation the supreme court has applied to contracts in the context of Minnesota's collection agency statutes.

10

Relator's collection activities of seeking payment for rental-vehicle damage claims fall squarely within the plain and unambiguous meaning of Minn. Stat. § 332.31, subd. 3. Pursuant to the agreement, relator seeks to collect "money for damages to a motor vehicle from any liable person by any lawful means available." This collection activity occurs only because an individual is allegedly responsible for damage to a rental vehicle and bears a pecuniary obligation for the cost of repair. Relator, by the terms of the agreement, seeks to collect on this pecuniary obligation. Thus, the rental-vehicle damage claims on which relator seeks recovery are encompassed within the statute's broad reach to collection activities on "any . . . other indebtedness" under Minn. Stat. § 332.31, subd. 3.[4]

Relator argues that it is not subject to Minnesota's collection agency statutes because its collection activities relate to unliquidated rental-vehicle damage claims. Relator asserts, without authority, that "the claim cannot fairly be characterized at [the time it arises] as an account, a bill, or a debt, as [relator] later identifies, shapes, and asserts a monetary claim in the first instance for the damage caused." But relator does not set forth a basis in the statutory language or our caselaw to support this narrow construction. The

---

[4] Our conclusion is consistent with other provisions within Minnesota's collection agency statutes, which indicate that a "claim" is appropriately considered to be "any account, bill, or other indebtedness." For example, Minn. Stat. § 332.37, which sets forth prohibited practices under Minnesota's collection agency statutes, identifies a "claim" in reference to collection agency activities. *See* Minn. Stat. § 332.37(a)(2) (collection agency may not "use or employ sheriffs or any other officer authorized to serve legal papers in connection with the collection of a claim"), (7) (collection agency may not "advertise or threaten to advertise for sale any claim as a means of forcing payment thereof"), (8) (collection agency may not "refuse to return any claim or claims and all valuable papers deposited with a claim or claims upon written request of the client, claimant or forwarder after tender of the amounts due and owing to a collection agency within 30 days after the request").

statute does not limit its reach to only those damage claims that have been reduced to a specific amount.[5]   And such a construction is inconsistent with the broad, public consumer-protection purpose of Minnesota's collection agency statutes.  *See Riehm v. Comm'r of Pub. Safety*, 745 N.W.2d 869, 873-74 (Minn. App. 2008) ("Statutes intended for the protection of the public are remedial in nature and are to be liberally construed to that end."), *rev. denied* (Minn. May 20, 2008).

And relator's argument is seemingly divorced from its actual practice.  Although the debt arising from damage to a rental vehicle may not be specifically reduced to a dollar amount at the time relator acquires the claim and initiates collection activities, relator is nevertheless seeking to collect *some amount* from the debtor.  And relator is actively seeking through its business activities to reduce the debt to a specified amount for purposes of collection.  Relator's narrow statutory reading is inconsistent with the broad reach of these consumer-protection statutes and therefore is unreasonable.[6]  *See Lewis-Miller v.*

---

[5]  We are unpersuaded by relator's argument that "every insurance company would have to be licensed with the State of Minnesota as a collection agency" if rental-vehicle damage claims are considered to be "any account, bill, or other indebtedness."  Minnesota's collection agency statutes expressly exempt insurance companies and certain other industries from the otherwise broad definition of a "collection agency."  Minn. Stat. § 332.32(a).

[6]  The Idaho Supreme Court considered and rejected a similar argument to that advanced by relator here.  Under the Idaho Collection Agency Act, a "collection agency" is defined as a person who engages in certain activities specified by statute, including "[e]ngag[ing], either directly or indirectly, in this state in the business of collecting or receiving payment for others of any account, bill, claim or other indebtedness."  Idaho Code §§ 26-2222(4), 26-2223(2) (2024).  In *PurCo Fleet Servs., Inc. v. Idaho State Department of Finance*, 90 P.3d 346 (2004), relator also argued that its recovery activities on rental-vehicle damage claims did not amount to collection on "a claim or other indebtedness."  In interpreting "claim," the Idaho Supreme Court adopted the same interpretation of that term as used in

12

*Ross*, 710 N.W.2d 565, 569 (Minn. 2006) ("When interpreting legislative enactments, we must presume that the legislature intended its statutes to be 'effective,' and not productive of 'absurd . . . or unreasonable' results." (citing Minn. Stat. § 645.17 (2004)).

We therefore hold that an entity that seeks to receive payment on any pecuniary obligation for others, including a rental-vehicle damage claim, is engaged in the collection of "any . . . other indebtedness" and thus is a "collection agency" under Minn. Stat. § 332.31, subd. 3, regardless of whether such indebtedness is liquidated. Relator is therefore engaged in the collection of any other indebtedness in its business activities of seeking to collect on rental-vehicle damage claims.

### B. Relator is involved in the collection of debts "for others."

Relator independently argues that it is not a "collection agency" subject to Minnesota's collection agency statutes because it is not engaged in debt collection activities "for others" as required by Minn. Stat. § 332.31, subd. 3. Relator argues that it cannot be engaged in collection activities for others because it receives a complete assignment of the damage claims at issue and is therefore collecting on a debt *for itself* as the owner of the debt. The commissioner concluded that relator is engaged in the collection

---

the Bankruptcy Act, in which "[t]he word 'claims' includes all demands of whatsoever character against the debtor or its property, whether secured or unsecured, liquidated, unliquidated, fixed or contingent." *PurCo*, 90 P.3d at 350. Such special meaning of "claim" was consistent with dictionary definitions of "claim" and "indebtedness." *Id.* In analyzing the business activities of relator in seeking to recover rental-vehicle damage claims from consumers, the Idaho Supreme Court concluded that "[t]he rental vehicle damage claim, which PurCo collected against the Idaho resident, constituted a claim or other indebtedness within the meaning of Idaho Code § 26-2223(2)." *Id.* We are persuaded by the Idaho Supreme Court's analysis.

13

of debts for others because, among other reasons, relator's vehicle rental company clients retain interest in and control over rental-vehicle damage claims pursuant to the agreement.

Minnesota's collection agency statutes do not define "for others." We again turn to dictionary definitions as an interpretive aid. *Abdus-Salam*, 1 N.W.3d at 877. The use of the word "for" functions to indicate "the recipient or beneficiary of an action," and means "on behalf of." *American Heritage*, *supra*, at 685.

And we again consider the entirety of the Minnesota collection agency statutes in discerning the meaning of "for others." *Pakhnyuk*, 926 N.W.2d at 920. Another provision of Minnesota's collection agency statutes provides that "[a] payment collected by a collector or collection agency *on behalf of* a customer shall be held by the collector or collection agency in a separate trust account clearly designated for customer funds." Minn. Stat. § 332.345 (emphasis added). We conclude that debt collection activities "for others" includes such activities conducted "on behalf of" or "for the benefit" of others.

That an entity contends that it received an assignment of claims does not preclude a determination that it also seeks to collect debts for others. Nothing in Minnesota's collection agency statutes suggests that an entity must be engaged in debt collection *exclusively* "for others." We will not "rewrite a statute under the guise of statutory interpretation" and cannot "add language that the legislature did not include." *Ewald v. Nedrebo*, 999 N.W.2d 546, 550-51 (Minn. App. 2023) (quotation omitted), *rev. denied* (Minn. Feb. 28, 2024). And Minnesota's collection agency statutes are concerned with the *business activities* constituting third-party debt collection, regardless of the mechanism by which debt-collection activities may occur. When collection efforts are undertaken for the

14

benefit of the original debtholder or on the original owner's behalf, such collection is "for others" under Minn. Stat. § 332.31, subd. 3, regardless of the technical legal ownership of the indebtedness at the time of collection.

An alternative interpretation of the Minnesota collection agency statutes is not reasonable. *See* Minn. Stat. § 645.17(1) (2024). Like other Minnesota laws, Minnesota's collection agency statutes are concerned with collection *activities*, not the legal structure by which the activities may be delegated among multiple entities or how entities self-define such activities. *See, e.g.*, Minn. Stat. §§ 80C.01-.22 (2024) (identifying factors in determining whether business arrangement constitutes a "franchise," which do not include a party's characterization of its arrangement); *Speaks, Inc. v. Jensen*, 243 N.W.2d 142, 145 (Minn. 1976) (holding that under unemployment-compensation law, the "nature of the [employment] relationship of the parties is to be determined from the consequences which the law attaches to their arrangements and conduct rather than the label they might place upon it"); *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 370 n.7 (Minn. 2005) (ascertaining contracting parties' intent to benefit a third party by reading contract terms in light of all the surrounding circumstances to determine whether there is an "objective manifestation" of such intent). We see no principled basis to adopt a different approach here.

We therefore hold that an entity that agrees to undertake efforts to collect a debt originally owned by another and remit to the original debtholder some or all amounts collected on that indebtedness is engaged in collection "for others" and thus is a "collection agency" within the meaning of Minn. Stat. § 332.31, subd. 3.

Against this backdrop, we conclude that relator is engaged in the business of debt collection "for others" within the meaning of Minn. Stat. § 332.31, subd. 3, because it sought to receive payment on damage claims on behalf of its vehicle rental company clients and for their benefit. A clear purpose of relator's agreements with its clients is to facilitate the collection of debts and remit most of the proceeds from any collection to those clients.[7] Pursuant to its agreement with vehicle rental companies, relator (1) receives an assignment of damage claims from a vehicle rental company; (2) seeks to recover on such damage claims; (3) places any proceeds of such recovery into a trust account; (4) disburses such proceeds to the vehicle rental company; and (5) retains a fee for its collection services.[8] Although clients may assign their right to collect debts to relator, the agreement also makes clear that relator has no right to retain the entirety of the proceeds of any collected debt.

_____

[7] We reject relator's argument that examining the substance of the agreement to determine whether it is engaged in collection "for others" under Minn. Stat. § 332.31, subd. 3, is a prohibited "collateral attack" on the agreement. In support of its argument, relator cites to authorities resolving disputes over the validity of an assignment of a specific claim, an issue not germane to the resolution of this appeal because our analysis assumes without deciding that such assignments are valid, as further discussed below.

[8] Relator argues that the commissioner's conclusion that it did not receive a valid assignment of claims is an error of law warranting reversal. We acknowledge that the commissioner questioned whether relator received a valid assignment of rights, and the commissioner's decision hinged on the determination about the legal validity of the assignment. But any error in the commissioner's determination as to the legal validity of the assignment is harmless. *See In re Decision to Deny Petitions for a Contested Case Hearing*, 924 N.W.2d 638, 645 (Minn. App. 2019) (citing Minn. R. Civ. P. 61 and disregarding harmless error in a certiorari appeal under MAPA), *rev. denied* (Minn. Apr. 24, 2019). As set forth herein, the reach of Minnesota's collection agency statutes does not depend on these ownership conventions; the statutes are instead concerned with business activities. We assume without deciding that relator received a valid assignment of claims and conclude that the undisputed record shows that relator is nevertheless engaged in debt-collection activities for others subject to Minnesota's collection agency statutes.

Instead, relator is obligated to segregate collected funds into a trust account,[9] relator's clients have audit rights to that trust account, and relator may only retain from the collected amounts a fee for its services and must remit the remainder of the collected proceeds to the client. The vehicle rental company client retains the right to access any of "its" damage claims that are in relator's possession, the right to terminate the agreement at will, and the right to have all uncollected damage claims returned to its possession. These undisputed facts establish that relator is engaged in debt-collection activities for its vehicle rental company clients. Stated differently, while relator's business involves collection on a pecuniary obligation for itself, the plain language of its agreements makes clear that it is *also* seeking to collect on a pecuniary obligation for the benefit of the original debtholder, the vehicle rental company.

Because relator seeks to receive payment on indebtedness and remits collected funds, less a fee for its services, to the original debtholder, relator is a "collection agency" pursuant to the plain meaning of Minn. Stat. § 332.31, subd. 3.

## II. Relator conducted business as a collection agency "in Minnesota" within the meaning of Minn. Stat. § 332.33, subd. 1.

As an additional independent basis for reversal, relator argues that the commissioner is without "regulatory authority" to order relator to cease and desist its unlicensed collection activity in Minnesota and erred as a matter of law in doing so. Relator asserts

---

[9] This contractual obligation is consistent with Minnesota's collection agency statutes, which explicitly require a payment collected by a collection agency on behalf of a customer to be held in a separate trust account clearly designated for customer funds. Minn. Stat. § 332.345.

17

that the commissioner lacks authority because relator is not conducting such business "in Minnesota" within the meaning of Minnesota's collection agency statutes. We disagree.

Pursuant to Minn. Stat. § 332.33, subd. 1, "no person shall conduct business *in Minnesota* as a collection agency . . . as defined in sections 332.31 to 332.44, without having first applied for and obtained a collection agency license." (Emphasis added.) The undisputed record establishes that relator conducted business as a debt-collection agency in Minnesota. Relator entered into the agreement with Minnesota-based vehicle rental companies at least five times to provide collection services on rental-vehicle damage claims. At least one customer who rented a vehicle in Minnesota later complained about relator's unlicensed debt-collection activities. Relator admits that it has previously attempted to recover damages from Minnesota residents.[10] And, at oral argument, counsel for relator conceded that relator conducts business in Minnesota because it has entered into the agreement with Minnesota-based vehicle rental companies.

We also disagree with relator's argument that it is not subject to Minnesota's collection agency statutes based on its assertion that it has not collected a debt from a Minnesota resident. Minn. Stat. § 332.33, subd. 1, broadly applies to an entity "conduct[ing] business in Minnesota as a collection agency," as defined by Minn. Stat.

---

[10] At oral argument, relator sought to clarify that it had not admitted to the actual recovery of damages from Minnesota residents. But our review of the record reveals that relator has sought to recover debts from Minnesota residents, which constitutes activity covered by Minnesota's collection agency statutes. Relator admitted that it has clients in Minnesota for which it performs the services described in the agreement discussed herein, that it has received rental-vehicle damage-claim files from damage incidents originating in Minnesota, and that it has received rental-vehicle damage claims from clients to recover for damages from Minnesota residents.

18

§ 332.31, subd. 3. Nothing in the plain language of the statute requires that collection activities must involve a Minnesota resident for Minnesota's collection agency statutes to apply. Relator's proposed limitation on this broad statute contravenes our well-settled authority that "[w]e decline to insert words or meanings that were intentionally or inadvertently omitted by the Legislature." *Jundt v. Jundt*, 12 N.W.3d 201, 206 (Minn. App. 2024) (quotation omitted), *rev. denied* (Minn. Dec. 31, 2024). We therefore hold that an entity that contracts with a Minnesota business to engage in efforts to collect a debt for the benefit of another or engages in debt collection originating from a transaction occurring in Minnesota is subject to regulation under Minnesota's collection agency statutes, Minn. Stat. §§ 332.31-.44. The commissioner was therefore authorized by Minnesota's collection agency statutes to order relator to cease and desist unlicensed debt-collection activities in Minnesota.[11]

### III. Minnesota's collection agency statutes are not unconstitutionally vague as applied to relator.

Relator also argues that Minnesota's collection agency statutes are unconstitutionally vague as applied to it. Relator argues Minnesota's collection agency statutes "lack[] key definitions and provide no standards," that the commissioner did not identify a standard in its application of the statutes to relator, and that applying these statutes to relator "would inject uncertainty into the rental car industry as well as other industries that commonly employ assignments of rights to payment."

---

[11] To be clear, the commissioner's authority extends to business activities occurring in Minnesota. Under the specific facts of this case, we conclude that the commissioner has not sought to exercise authority over relator's activities unrelated to Minnesota.

19

"Constitutional challenges are questions of law, which we review de novo. In conducting this review, we recognize that Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional is exercised with extreme caution and only when absolutely necessary." *Campbell*, 756 N.W.2d at 268 (quotation and citation omitted); *see also Hard Times Cafe, Inc. v. City of Minneapolis*, 625 N.W.2d 165, 171 (Minn. App. 2001) ("Courts should exercise extreme caution before declaring a statute void for vagueness."); *Council of Indep. Tobacco Mfrs. of Am. v. State*, 713 N.W.2d 300, 305 (Minn. 2006) (noting a party faces a "heavy burden" in seeking to invalidate a statute as unconstitutional).

"A statute is void due to vagueness if it defines an act in a manner that encourages arbitrary and discriminatory enforcement, or the law is so indefinite that people must guess at its meaning." *Hard Times Cafe*, 625 N.W.2d at 171 (quotation omitted). An entity challenging a statute as being void for vagueness "must show the statute lacks specificity as to [its] own behavior rather than some hypothetical situation." *Ruzic v. Comm'r of Pub. Safety*, 455 N.W.2d 89, 92 (Minn. App. 1990), *rev. denied* (Minn. June 26, 1990); *see also City of Minneapolis v. Reha*, 483 N.W.2d 688, 691 (Minn. 1992) (explaining that to prevail on an "unconstitutional-as-applied claim," appellant must show that the statute was impermissibly vague as applied to their own behavior). "[V]agueness challenges under the Due Process Clause must be analyzed as applied to the facts of the case at issue and 'may be overcome in any specific case where reasonable persons would know that their conduct is at risk.'" *In re Molnar*, 720 N.W.2d 604, 614 (Minn. App. 2006) (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)); *see also State v. Christie*, 506 N.W.2d 293, 301

20

(Minn. 1993) ("Vagueness challenges not involving First Amendment freedoms are to be examined in light of the applicable facts.").

Minnesota's collection agency statutes are not unconstitutionally vague as applied to relator because, as explained above, the plain and unambiguous language of the statutes requires relator to obtain a license. Relator cannot reasonably assert that it is unaware of the risk that its conduct is subject to Minnesota's collection agency statutes.[12] Relator is licensed as a collection agency in at least two other jurisdictions. In litigation in at least two other jurisdictions, relator has unsuccessfully advanced arguments similar to those in this appeal that it should not be required to obtain licensure as a collection agency.[13] Relator acknowledges that consumers have previously argued that relator is subject to the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p (2024), or an analogous state statute, and that for this reason, it provides a notice to consumers as required under the FDCPA. Although relator argues that such notice is not a concession "that it is a debt collector under the FDCPA or any state law," the fact that it provides such a notice underscores that a reasonable person would be aware that licensure as a collection agency under Minnesota's collection agency statutes may be required given relator's

---

[12] We decline to address relator's argument regarding the hypothetical application of Minnesota's collection agency statutes to other industries as irrelevant to its as-applied constitutional challenge. *See Ruzic*, 455 N.W.2d at 92.

[13] *See PurCo Fleet Servs., Inc. v. Idaho Dep't of Fin.*, 90 P.3d 346 (Idaho 2004); *PurCo Fleet Servs., Inc. v. Koenig*, 240 P.3d 435 (Colo. App. 2010), *aff'd on other grounds*, 285 P.3d 979 (Colo. 2012).

business activities, notably described in its agreement as "collection." We therefore reject relator's as-applied constitutional challenge to Minnesota's collection agency statutes.

## DECISION

We hold that an entity that seeks to receive payment on any pecuniary obligation for others, including a rental-vehicle damage claim, is engaged in the collection of "any . . . other indebtedness" and thus is a "collection agency" under Minn. Stat. § 332.31, subd. 3, regardless of whether such indebtedness is liquidated. We also hold that an entity that agrees to undertake efforts to collect a debt originally owned by another and remit to the original debtholder some or all amounts collected on that indebtedness is engaged in collection "for others" and thus is a "collection agency" within the meaning of Minn. Stat. § 332.31, subd. 3. And we further hold that an entity that contracts with a Minnesota business to engage in efforts to collect a debt for the benefit of another or engages in debt collection originating from a transaction occurring in Minnesota is subject to regulation under Minnesota's collection agency statutes, Minn. Stat. §§ 332.31-.44.

Because relator engaged in debt-collection activities for others in Minnesota within the meaning of Minnesota's collection agency statutes, the commissioner was authorized to order relator to cease and desist operating as a collection agency without a license.

**Affirmed.**